## O. F. HALEY CO. v. STATE.

No. 2027. Opinion Filed July 18, 1912.

(125 Pac. 736.)

INTOXICATING LIQUORS—Searches and Seizures—Interpleader. Where a firm ships whisky from another state into that part of this state formerly Indian Territory, and it is seized by the state authorities, and such firm interpleads and asks a return to it of such whisky, on the ground that it is an interstate shipment, and has not lost its interstate character by delivery to the consignee, held that, because the allegations of the interplea show a violation of the criminal laws of the United States, the doors of the courts are closed to such firm.

(Syllabus by Brewer, C.)

*Error from Murray County Court;*
*Harry W. Fielding, Judge.*

Upon the seizure of a quantity of intoxicating liquors under a search warrant, the O. F. Haley Company interpleads, claiming the liquor. From a judgment overruling the interplea, the O. F. Haley Company brings error. Affirmed.

*Wm. Pfeiffer,* for plaintiff in error.

*J. M. Hayes,* for the State.

Opinion by BREWER, C. On September 17, 1909, in the town of Sulphur, Murray county, a large quantity of whisky and beer was seized, while in the railroad depot, under a search warrant issued by the county judge of that county, in pursuance of the enforcement act (Comp. Laws 1909, sec. 4184).

At the hearing of the return to the writ, under section 4185, Comp. Laws 1909, the plaintiff in error claimed the liquors seized under the writ, in a formal pleading in the nature of an interplea, which, omitting caption, follows:

"Comes now O. F. Haley Co. and respectfully represents and shows to the court that it is the owner of and entitled to the immediate possession of certain liquor, to wit, and consigned to the following parties, to wit:

Opinion of the Court.

| | | | |
|---|---|---|---|
| 7-21-09. | D. F. Wheeler. | 2 | casks of beer. |
| 8-6 -09. | E. H. Brown | 6 | cases whisky. |
| 8-19-09. | Wm. Moore. | 2 | " " |
| 8-19-09. | " " | 2 | " " |
| 8-19-09. | " " | 2 | " " |
| 8-19-09. | " " | 2 | casks beer. |
| 8-20-09. | " " | 2 | " " |
| 8-20-09. | " " | 2 | " " |
| 8-23-09. | Ed Potts. | 1 | " " |
| 8-31-09. | A. J. Porter. | 2 | " " |

"Which said liquor was consigned from Gainsville, in the state of Texas, to Sulphur, in the state of Oklahoma, and delivered by said O. F. Haley Co. at said Gainsville to the common carrier, to wit, G., C. & S. F. Ry. Co., for transportation from said town of Gainsville to said town of Sulphur. That said goods were shipped to above-named parties under contract, commonly known as 'shippers' order.' That said above-described goods were seized by the enforcement officers of this state from the freight and warehouses of the said G., C. & S. F. Ry. Co. at Sulphur, and before same were delivered to the consignee. That title and ownership of said liquors are now in the said O. F. Haley Company, and are now wrongfully in the possession of the sheriff of Murray county, state of Oklahoma. That the above-described goods were not knowingly used or permitted to be used in violation of any of the provisions of what is known as the 'Billups Law' of this state. Wherefore, the premises considered, this interpleader prays that the above-described goods be returned to him as provided by law."

The court held that the averments of this interplea were not sufficient to entitle the plaintiff in error to a return of the seized goods, and, the interpleader electing to stand thereon, judgment was rendered that the goods were subject to seizure and confiscation, under chapter 61, Comp. Laws 1909; and that they be delivered to the superintendent of the state agency at Guthrie. From this judgment on the pleading, this appeal is prosecuted.

It is clear that the claim set up here for a return of the goods is based on the supposed protection of the Constitution and laws relating to interstate commerce, upon the theory that these shipments were interstate commerce; and that, when seized, their character as such had not been lost by a delivery to the consignees. Ordinarily this contention would be sound. *State v. Eighteen Casks of Beer,* 24 Okla. 786, 104 Pac. 1093, 25 L. R. A.

(N. S.) 492; *St. L. & S. F. R. Co. v. State,* 26 Okla. 300, 109 Pac. 230; *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804; *High v. State,* 2 Okla. Cr. 161, 101 Pac. 115, 28 L. R. A. (N. S.) 162; *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088; *Vance v. Vandercook,* 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; *Heyman v. Southern R. Co.,* 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178, 7 Ann. Cas. 1130; *Adams Exp. Co. v. Kentucky,* 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987.

The decisions of the United States Circuit Court of Appeals, Eighth Circuit, in *United States Ex. Co. v. Friedman,* 191 Fed. 673, 112 C. C. A. 219, and *Ex parte Webb,* 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248, decided by the Supreme Court of the United States June 10, 1912, make it clear, however, that the plaintiff in error can find no relief on the theory advanced.

In the case of *Ex parte Webb, supra,* the Supreme Court quotes from the act of Congress of March 1, 1895, c. 145, 28 Stat. 693, as follows:

"That any person, whether an Indian or otherwise, who shall, in said territory, sell, give away, or in any manner, or by any means furnish to any one, either for himself or another, any vinous, malt, or fermented liquors, or any other intoxicating drinks of any kind whatsoever, whether medicated or not, or who shall carry, or in any manner have carried, into said territory any such liquors or drinks, or who shall be interested in such manufacture, sale, giving away, furnishing to any one, or carrying into said territory any of such liquors or drinks, shall, upon conviction thereof, be punished by fine not exceeding five hundred dollars and by imprisonment for not less than one month nor more than five years."

—and proceeds to hold that while the provisions of that act have been impliedly repealed, in so far as the manufacture, sale, and furnishing of liquors is concerned, yet that it is in full force and effect, in so far as it relates to the introduction of liquors from another state into that part of Oklahoma which was formerly Indian Territory. This holding of the court is predicated on the fact that the Congress has, under the Constitution of the United States, sole power to "regulate commerce * * * among the several states, and with the Indian Tribes," etc. Article 1,

sec. 8, Const. That the town of Sulphur and Murray county are part of the old Indian Territory, we know judicially.

It is immaterial what our views of the doctrine announced in the Webb case may be, in so far as the question of interstate commerce is involved and decided in it; the rule announced by that court is the law of the land. On the precise point, we quote from the text of that opinion:

"In view of these considerations, and others to be mentioned, it seems to us that Congress, so far from intending by the Enabling Act to repeal so much of the act of 1895 as prohibits the carrying of intoxicating liquors into the Indian Territory from points without the state, framed the Enabling Act with a clear view of the distinction between the powers appropriate to be exercised by the new state over matters within her borders, and the powers appropriate to be exercised by the United States over traffic originating beyond the borders of the new state and extending within the Indian Territory."

It follows, then, that the allegations of the interplea in this case, upon which the plaintiff in error demands the interference of the court, by ordering a return and delivery to it of the liquors seized by the state, when viewed in the light of the decision in the Webb case, *supra,* clearly show that the interpleader has violated a law of the United States in shipping the liquors as it did. Those allegations, presented in a proper way to a federal grand jury, would justify an indictment, and later a conviction, carrying with it a possible sentence of five years in the penitentiary. Therefore it resolves itself into the single question: Will the court lend its aid to one who asserts a right growing out of his own violation of the law? We answer, "No." The principle of public policy is expressed in the maxim, *Ex dolo malo non oritur actio,* and in discussing this maxim Lord Mansfield says:

"No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own statement or otherwise, the cause of action appears to arise *ex turpa causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted." (Wharton's Legal Maxims, p. 81.)

This rule is sustained by this court in the case of *Blunk v. Waugh et al.,* 32 Okla. 616, 122 Pac. 717, wherein it is said:

"It is well established, we might say universally established, that the courts will not enforce any rights which directly arise out of an illegal contract. *Holden v. Lynn,* 30 Okla. 663, 120 Pac. 246; *Citizens' National Bank of Chickasha v. Mitchell,* 24 Okla. 488, 103 Pac. 720 [20 Ann. Cas. 371]; *Wagner v. Minnie Harvester Co.,* 25 Okla. 558, 106 Pac. 969; *Binswanger v. Stanford,* 28 Okla. 429, 114 Pac. 621, in which the earlier Oklahoma cases are cited; *Bowman v. Phillips,* 41 Kan. 364, 21 Pac. 230, 3 L. R. A. 631, 13 Am. St. Rep. 292; *Tatum v. Kelley,* 25 Ark. 209, 94 Am. Dec. 717; *Graves v. Johnson,* 156 Mass. 211, 30 N. E. 818, 15 L. R. A. 834, 32 Am. St. Rep. 446; *Banchor v. Mansel,* 47 Me. 58; *Hanauer v. Doane,* 12 Wall. 342, 20 L. Ed. 439; *Fisher v. Lord,* 63 N. H. 514 [3 Atl. 927]."

If the courts will not open their doors to enforce an illegal or fraudulent contract, they certainly will not to enforce a demand inseparably connected with a violation of the criminal laws.

The cause should be affirmed.

By the Court: It is so ordered.