### KLEIN *et al.* v. KELLER.

No. 3579.    Opinion Filed June 9, 1914.

Rehearing Denied July 28, 1914.

(141 Pac. 1117.)

1. **CONTRACTS—Validity—What Law Governs.** The question whether a contract is .legal or illegal is judged by the law on the subject in the state or country in which the contract is made; the general rule being that "a contract good where made is good everywhere, and a contract invalid where made is invalid everywhere." The exceptions to the general rule are: "(1) Where the contract in question is contrary to good morals; (2) where the state of the forum or its citizens would be injured through the enforcement by its courts of contracts of the kind in question; (3) where the contract violates the positive legislation of the state of the forum, that is, is contrary to its Constitution or statutes; (4) where the contract violates the public policy of the state of the forum.

2. **EVIDENCE—Presumption—Knowledge of Law.** As a general rule, a man is presumed to know and understand, not only the laws of the country where he dwells, but also those of the foreign country or state in which he transacts business.

3. **INTOXICATING LIQUORS—Contracts for Purchase—Right to Enforce.** A contract for the purchase of intoxicating liquors for a quantity in excess of that authorized by law, between a citizen of this state and a citizen of some other state, cannot be enforced in the courts of our state, although the laws of the other state in question may authorize such contract.

4. **SAME.** Where two parties reside in different states, both of which authorize the sale of intoxicating liquors, and a retail dealer in one of such states contracts with a wholesale dealer in the other of such states for a quantity of liquors, such contract being made with no intention to violate the laws of either state, and being valid in either of such states, and being such a contract as affects neither the statutes nor the policy of this state, it may be enforced in the courts of this state.

(Syllabus by Harrison, C.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by Samuel Klein and J. D. Klein against J. Keller
on an account. Judgment for defendant, and plaintiffs bring
error. Reversed.

*Joseph T. Mitchell,* for plaintiffs in error.

*S. H. King,* for defendant in error.

Opinion by HARRISON, C. This is an action by Klein
Bros. against J. Keller for the balance of $3,819.79 due for liq-
uors, wines, etc., sold to Keller on account. Klein Bros. was a
wholesale liquor firm of the state of Ohio. Keller was a retail
liquor dealer of Gainesville, Tex., and had been doing business
with the firm of Klein Bros. on an open account, making payment
at different times, but finally closed out his retail liquor busi-
ness in Gainesville and subsequently moved to Oklahoma, owing
Klein Bros. the aforesaid balance. Upon his refusal to pay same,
or any portion of same, after he had moved to Oklahoma, Klein
Bros. instituted suit for the amount due. At the trial of the
cause judgment was rendered in favor of Keller, upon the theory
that the contracts for the payment for intoxicating liquors could
not be enforced in the state of Oklahoma, being against the
policy of the prohibitory laws of the state.

It is agreed between the parties that the account is just and
correct; that it was made while Keller was engaged in the re-
tail liquor business in Gainesville, Cook county, Tex., and while
Klein Bros. were engaged in the wholesale liquor business in the
state of Ohio; and that such business was legal and duly author-
ized, and such contract valid both in the state of Texas and in
the state of Ohio; that the laws of neither state were violated
by the transaction between the parties, but that the contract be-
tween them was valid and enforceable in either state; and upon
such agreed statement of facts, and that the account in question
was true and correct and wholly unpaid, the court sustained de-
fendant's demurrer to the evidence and rendered judgment in
favor of defendant, upon the theory that such contract was not

enforceable in the state of Oklahoma. This is the sole question presented here. The case is ably briefed by both parties, and both parties made oral arguments to this court. The question, then, is whether the contract in question comes under the general rule that contracts valid where made are valid everywhere, or whether it falls under some one of the exceptions to the general rule.

In 9 Cyc. 672, the general rule is stated to be as follows:

"The validity of the contract, that is, the question whether the contract is a legal or an illegal one, is judged by the law on the subject in the state or country in which the contract is entered into; the general rule being that a contract good where made is good everywhere, and a contract invalid where made is invalid everywhere."

On page 674, *Id.,* the exceptions to the general doctrine are stated as follows:

"(1) Where the contract in question is contrary to good morals; (2) where the state of the forum or its citizens would be injured through the enforcement by its courts of contracts of the kind in question; (3) where the contract violates the positive legislation of the state of the forum, that is, is contrary to its Constitution or statutes; and (4) where the contract violates the public policy of the state of the forum."

From a somewhat extensive examination of the authorities and text-books, including Wharton, Story, and Dicey on Conflict of Laws, as well as many decisions cited in their texts, we believe the above statement of the law by Cyc. is universally accepted as correct; the only conflict in the decisions being the views which the courts of different jurisdictions have taken in cases coming under some one of the exceptions to the general rule.

It is unnecessary in the case at bar to pass upon the question whether a contract between a party in one state and a party in another state is to be adjudged by the laws of the state of the purchaser or the state of the seller. That question is not involved in this case, for it is conceded that the contract in question was valid in either state, and the business in which the parties were engaged was authorized by the law of both states. Nor

are the decisions cited of cases where persons living in a prohibition state have ordered intoxicating liquors from dealers in states which authorize the traffic applicable to the case at bar. In a number of prohibition states where the statutes expressly provide against the manufacture, barter, or sale of intoxicating liquors, the courts of such states have held that purchases made from parties living in states which authorize the sale and manufacture of intoxicating liquors were deemed to have been made in the state where the purchase was made, and, being valid in such state, were enforceable against the purchaser, although the laws of his state prohibited such contracts. But in every case which we have been able to find where such character of contract has been upheld and enforced by the prohibition state, it has been upon the theory that the contract was made in the state which authorized such contracts, in the state in which such contracts are upheld, and upon the further theory that it did not appear that the seller had knowledge that the goods purchased were purchased for the purpose of violating the law, or being sold in violation of law, or that the seller entered into the contract with the purchaser for the purpose of violating the laws of the purchaser's state. See Black on Intoxicating Liquors, secs. 269, 270, and authorities cited in notes; 23 Cyc. 335-340, and authorities cited.

While, on the other hand, many of such contracts have been held invalid because it appeared that the seller had knowledge that the purchaser intended to sell same in violation of law, or that such seller entered into the contract with the purchaser for the purpose of violating the statutes of the purchaser's state. But our own court in several decisions has held that the doors of the courts of this state are closed against the enforcement of that character of contracts. That is, where a resident of Oklahoma has purchased intoxicating liquors from dealers in states which authorize the sale of such liquors, that such contracts cannot be enforced in this state. *Blunk v. Waugh,* 32 Okla. 616, 122 Pac. 717, 39 L. R. A. (N. S.) 1093; *Haley v. State,* 34 Okla. 300, 125 Pac. 736; *Pabst Brewing Co. v. Smith,* 39 Okla. 403, 135

Pac. 381—these decisions being based upon the theory that the making of such contracts is in violation of the statutes of our state and the enforcement of same against the policy of our state, and in contravention of the objects to be attained by the enactment of our prohibitory law.

Possibly the real basis of this theory is the doctrine followed in *Hill v. Spear,* 50 N. H. 253, 9 Am. Rep. 205, wherein the Supreme Court of that state held:

"A man is presumed to know and understand, not only the laws of the country wherein he dwells, but also those of the foreign country or state in which he transacts business."

Under this theory of the law, a state which has a statute against the manufacture and sale of intoxicating liquors is justified in closing the doors of its courts against the enforcement of such contracts, and can do so on the grounds of public policy, without doing violence either to the general doctrine that "a contract valid where made is valid everywhere," or without infringing upon the rule of comity between states, and without straining the law in order to bring the case within one of the exceptions to the general rule. Under this theory the enforcement of a contract of this character is properly denied, because its very object is to do something in violation of law; to conduct a business which the law prohibits, a business which not only violates the letter and policy of the law, but imposes upon the moral sense of the state which enacts such law. In reality, it is not the contract that does the harm, but it is the carrying on of the business which is contemplated in such a contract. The contract may violate only the technical letter of the law and aid in thwarting its objects. But the business contemplated in such contract not only does both these, but imposes upon the citizenship of the state by compelling it to endure the conduct of a business which the state deems injurious to its morals, and we think it not improper to say that it is sheer nonsense to pretend that there is a wholesale liquor house in the United States that is doing business or making contracts with citizens of Oklahoma but what knows that Oklahoma has a prohibitory law. Hence the enforcement of contracts for liquor to be shipped into this state

in quantities above what the law authorized is just as properly denied as if both parties resided in a state that authorized such contracts and they agreed to come to Oklahoma and engage in the sale of intoxicating liquors. It is just as properly denied as would be a contract between two parties residing in a state which authorized gaming to come to Oklahoma and open a gambling hall. In either case it is a contract which has for its object the doing of something in violation of law; the doing of something which not only violates the law of the state, but inflicts upon its moral sense a business which it deems injurious and seeks to guard against by law.

But such is not true in the case at bar. Klein Bros. and Keller did not contemplate the violation of any law nor the engaging in a business which the law prohibited. The laws of Oklahoma were not in the least affected by either contract, nor by the business in which either of them was engaged, and it is immaterial whether their contract was made in the state of Ohio or the state of Texas. It was perfectly valid in either state, and both states authorized the business in which the parties were engaged. Their contract, as well as the business which doubtless in a measure entered into it, both being valid in the states wherein the parties resided, and the laws of Oklahoma being affected by neither, we cannot say wherein the policy of our state could be impaired by enforcing such contract, or any reason why the law of contracts, as well as the rule of comity, should not constrain us to render judgment on a debt the correctness and validity of which is admitted. In our opinion the case at bar should be governed by the general rule on contracts. There was no intention on the part of either party to do other than make a contract which was valid in either state, and to carry on a business which was authorized by the laws of both states. In *Green v. Collins,* 3 Cliff. 494, Fed. Cas. No. 5755, the court said:

"Satisfactory proof was introduced by the plaintiffs that they were duly licensed to sell such liquors at their place of business, and, it being conceded that the contract was valid at the place where it was made, it is clear that the provision in question, even if unrepealed, could not have any effect in the circuit court

to defeat the plaintiffs' right of action in this case, as they are citizens of another state. Doubts may at one time have existed upon the subject, but it is now well settled that a state law cannot discharge or suspend the obligation of a contract made in another state, if it was legal where it was made, and was a contract with a citizen of another state, not even if it was to be performed in the state whose law is invoked to defeat the remedy. *Baldwin v. Bank of Newbury,* 1 Wall. 236 [17 L. Ed. 534]; *Demeritt v. Exchange Bank,* 20 Law Rep. 606 [Fed. Cas. No. 3780]; *Hunt v. Danforth,* 2 Curt. 604 [Fed. Cas. No. 6887]; *Suydam v. Broadnax et al.,* 14 Pet. 74 [10 L. Ed. 357]; *Union Bank v. Jolly,* 18 How. 503 [15 L. Ed. 472]; *Watson v. Tarpley,* 18 How. 520 [15 L. Ed. 509]; *Hyde et al. v. Stone,* 20 How. 175 [15 L. Ed. 874].

"Contracts are to be construed and carried into effect according to the intention of the parties thereto, and they are presumed to contract with reference to the law of the place where they reside and transact business, unless a different intention is manifest from the terms which they employ. *Judd v. Porter,* 7 Greenl. [Me.] 337. The law of the contract travels with it wherever the parties thereto are to be found, and into whatever forum resort is had for its enforcement. Motion for new trial overruled. Judgment on the verdict."

This is our view of the case at bar. We think the judgment should be reversed, and the cause remanded, with instructions to overrule the demurrer and render judgment in favor of plaintiffs in error.

By the Court: It is so ordered.