## FIST et al. v. LA BATTE.

No. 5975—Opinion Filed April 2, 1918.

(171 Pac. 1120.)

1. **Intoxicating Liquors—Foreign Contract —Legality—Enforcement.**

A contract made in the state of Colorado and valid in that state, the consideration of which was the transfer of a saloon in Colorado, including a stock of intoxicating liquors, will be enforced by the courts of the state of Oklahoma when their jurisdiction is duly invoked and it is not shown that such contract contemplated a violation of the laws of Oklahoma.

2. **Contracts—Illegality—Presumption and Burden of Proof.**

The presumption is that contracts, on their face lawful and made in apparent good faith, are valid, and a party to such contracts who seeks to avoid liability on the ground of bad faith or alleged unlawful nature of the transactions involved has the burden of alleging and proving the necessary facts to overcome such presumption.

(Syllabus by Stewart, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by Julius Fist and Emanuel Fist, doing business under the firm name of Julius Fist & Co., against Edna La Batte. Judgment for defendant, and plaintiffs appeal. Reversed and remanded, with directions to render judgment for plaintiffs.

J. M. Worten and J. W. Arrington, for plaintiffs in error.

Grinstead & Scott, for defendant in error.

Opinion by STEWART, C. The plaintiffs commenced action against the defendant on a series of past-due promissory notes in a total sum of $1,300 principal, bearing interest at 6 per cent. from January 21, 1910, secured by mortgage on land in Osage county, Okla., which notes and mortgage are alleged to have been executed in the state of Colorado in favor of Samuel Schwartz, and by him assigned and indorsed in due course to the plaintiffs. The defendant pleads as her sole defense that the notes and mortgage were executed by herself and John La Batte, and herself in consideration of sale to John La Batte by Samuel Schwartz of one-half interest in a saloon business in the state of Colorado, including a stock of intoxicating liquors, in contravention of public policy in that La Batte was a half-breed Sioux Indian, such sale being thereby in violation of the statutes of Colorado and of the act of Congress of June 30, 1897 (chapter 109, 29 Stat. 506 [U. S. Comp. St. 1916, § 4137]), prohibiting the sale of intoxicating liquors to an Indian; that such liquors were sold ostensibly to Milton Barnes, a white man, brother-in-law of La Batte, and bill of sale was executed by Schwartz transferring such property to Barnes for the purpose of consummating an illegal sale of such liquors to La Batte, and was an attempt to circumvent and avoid the statutes of Colorado and of the United States; and that the plaintiffs became indorsees of such notes and mortgage with full knowledge of such facts.

It developed in the testimony that the notes and mortgage were transferred to the plaintiffs before maturity as collateral security for an indebtedness of $656.34 owing by Schwartz to the plaintiffs. The trial court, after hearing the evidence, held that the amount of said notes in excess of such sum was void, and that the notes should be canceled as to such excess, reserving any holding as to the validity of such notes in the hands of the plaintiffs as to such sum of $656.34. The court concluded, however, that neither the notes nor mortgage could be enforced by the courts of this state because of the public policy as expressed in our Constitution and statutes prohibiting the sale of intoxicating liquor in this state. Judgment was rendered canceling the notes for the excess above the sum of $656.34, canceling the mortgage in toto, removing all cloud, because of such mortgage from the title of the defendant to the land involved, and adjudging that neither the plaintiffs nor Samuel Schwartz had any

right, title, equity, or interest in or to said land. Plaintiffs duly appeal to this court.

It is agreed by the parties that, if Schwartz, in good faith, sold the saloon, including the intoxicating liquors, to Barnes, the white man, and not to La Batte, the half-breed Indian, the contract was lawful in Colorado and could be enforced in that state under the law as it then existed. We may say in the outset that the trial court was wrong in holding that the courts of Oklahoma would not enforce the contract under consideration, if the same was valid in Colorado, where made. The same trial court, in another case, had previously held that an obligation arising for the purchase price of intoxicating liquors to be handled in Texas, bought by a resident of Texas from a resident of Ohio, could not be enforced in the courts of this state. At the time of the trial in the instant case, the former case had been appealed, but had not been determined by this court. Since such time, however, the judgment in such former case has been reversed, it being held that, as the contract was valid, both under the laws of the state of Texas and of the state of Ohio and the transaction in no wise affected the prohibitory laws or other public policy of this state, the courts of the state of Oklahoma, having duly acquired jurisdiction of the parties, would enforce the obligation under the well-established rule that a contract good where made is good everywhere and a contract invalid where made is invalid everywhere. Klein v. Keller, 42 Okla. 592, 141 Pac. 1117, Ann. Cas. 1916D, 1070. Counsel for defendant in their brief seek to distinguish the facts in Klein v. Keller, supra, from the facts in the instant case, but an examination of the opinion rendered will lead to the inevitable conclusion that the same underlying principles of law are involved in each case. In the instant case it is not contended that the liquor was to be introduced into the state of Oklahoma or otherwise handled in violation of law. Unquestionably, the courts of this state will not lend their aid to enforce any contract having for its object in part or in whole the violation of law. However, under the comity of states and the federal Constitution, it would be the duty of the courts of this state to enforce any contract made in a sister state and valid under the laws of such state, but a contract having for one of its objects the violation of a law of the state of Oklahoma, or which would necessarily result in such violation, would, we think, neither be enforceable in the state of Oklahoma nor in the state where made.

It being admitted that the lex loci permitted the sale of intoxicating liquors to a white man, we will now assume, without deciding, that the notes and mortgage in question would be invalid, under the law as applied to the facts in the instant case, if the sale were made to La Batte, the Indian, and not to Barnes, his white brother-in-law, and we will consider whether or not the testimony sustains the finding that the liquor was not sold to Barnes, but to La Batte. The defendant has admitted in the answer that the legal title of the property was placed in Barnes, but charges that such was done as a subterfuge to avoid the force of the prohibitory statutes against such a sale to Indians. The burden of overcoming the presumption of validity and good faith and to establish the collusion rests upon the defendant. The trial court, on motion of the plaintiffs, properly required the defendant to assume the burden of proof, whereupon the defendant introduced the depositions of Samuel Schwartz and others taken by the plaintiffs in Colorado after which she testified in her own behalf. There was no other evidence, introduced. The testimony of Schwartz was to the effect that he sold to Barnes; that Barnes had previously purchased a half interest in the business, and agreed that, if Schwartz would sell him the other half interest he would pay $1,300 for the same, and that La Batte and wife would secure the payment with a mortgage on Oklahoma land. He also testified that after the transfer, the saloon was managed entirely by Barnes; that La Batte, so far as could be observed, had nothing to do with its management or control; that he did not know that Mr. and Mrs. La Batte were Indians; that he met Mrs. La Batte only at the time when she came to sign the mortgage, and that no discussion was had concerning the deal at that time. The testimony given by each of the plaintiffs was read, and they say that they had no knowledge of La Batte claiming any interest in the saloon, or of the saloon being sold to him, if such was the case, at the time they became the indorsees of the notes and mortgage. There is not a particle of testimony by any witness to show collusion or, even inferentially, to show that Schwartz sold the half interest in the saloon to any person but Barnes. Mrs. La Batte does not claim to have any personal knowledge of the transaction except the fact of signing the notes and mortgage. In answer to questions by her counsel she testified that she made the note and mortgage to pay for a half interest in a saloon which here husband was purchasing. She does not testify to any facts or circumstances tending to show why the bill of sale was made to Barnes and not to her husband. In answer to questions of counsel for plaintiffs, she testified that all she knew about the transaction was what her husband told her; that she did not have any conversation with Schwartz about the matter, did not discuss the same when she signed the mortgage, and based her testimony solely upon the information given by her husband. Plaintiffs moved to strike her testimony as to matters told her by her husband as hearsay. The motion should have been sustained, but was overruled by the court, the plaintiffs excepting. Such testimony was wholly incompetent, and was the only testimony offered by the defendant on the vital and decisive question as to whom the saloon was sold. There is not a semblance of competent testimony tending to support the allegations that La Batte was the real purchaser, or that shows that there was any subterfuge or bad faith on the part of Schwartz. The fact that La Batte and his wife gave notes and mortgage to secure the payment of the money is not evidence, under the issues in this case, to show that La Batte was the purchaser.

The defendant is an educated Osage Indian. It is admitted that a certificate of competency had been issued to her, and that she was not inhibited from incumbering the land for lawful purposes. The plaintiffs are entitled to judgment for the full amount due on the notes, and for foreclosure of the mortgage. By the terms of the mortgage the plaintiffs may be allowed a reasonable sum, not to exceed $75, as attorney's fees, but they failed to offer testimony as to the reasonable value of attorney's services. Following the precedent in Holland Banking Co. v. Dicks, 67 Okla. 228, 170 Pac. 253, in the absence of such testimony, or a provision in the contract for a specific sum as attorney's fees, we are unable to allow attorney's fees.

The judgment is reversed, and the cause remanded, with directions to render judgment in favor of the plaintiffs for the sum of $1,300, with interest at 6 per cent. per annum from January 21, 1910, for costs and for foreclosure of the mortgage and sale of the land; the proceeds to be applied in satisfaction of the judgment and costs, the residue, if any, to be paid to defendant.

By the Court: It is so ordered