## HENNING *v.* HILL.

[No. 11,550. Filed October 5, 1923.]

1. STATUTES.—*Foreign States.—Parol Contracts.—Commissions. —Pleading.—Proof.*—A resident of a foreign state may enforce in this state a parol contract made in that state for the payment of commissions for the sale of real estate therein, where the owner has become a resident of this state after the consummation of such sale, in the absence of any allegation or proof of a statute of such state relating to such contract. p. 365.

2. EVIDENCE.—*Laws of Foreign State.—Judicial Notice.—Common Law.*—The Appellate Court knows that the common law was declared a part of the fundamental law of the territory out of which Illinois was formed. p. 365.

3. EVIDENCE.—*Laws of Foreign States.—Contract for Sale of Realty.— Presumption that Common Law Obtains.*— Where nothing to the contrary appears, the common law will be presumed to be in force in a sister state, with reference to a contract for commissions on real estate. p. 365.

4. BROKERS.—*Commissions.—Parol Contracts.—Common Law.*— Under the common law a parol contract for the payment of a commission for the sale of real estate was valid. p. 365.

5. BROKERS.—*Commissions.—Parol Contracts in Foreign States. —Validity.—Public Policy.—Comity.*—An oral contract, executed in a foreign state for commissions for sale of real estate in that state, which is valid in that state, is valid and enforceable in this state, under the principle of comity, unless its enforcement would be contrary to public policy or forbidden by positive law. p. 365.

6. BROKERS.—*Parol Contract for Commissions.—Foreign States. —Validity.— Comity.— Statutes.—* Section 7463 Burns 1914, Acts 1913 p. 638, rendering invalid an oral contract for the payment of commission for the procuring a purchaser for real estate, has no extraterritorial force; hence, such a contract executed in and relating to real estate in a foreign state and valid under the laws of that state, is not forbidden by positive law

or contrary to public policy, so as to limit the application of the principle of comity. (Disapproving *Price* v. *Walker* [1909], 43 Ind. App. 519). p. 366.

7. CONTRACTS.—*Lex Loci Contractus.*—Questions as to formality respecting contracts are governed by the law of the place where contracts are made, and not by the law of the forum where their enforcement is sought. p. 366.

8. COURTS.— *Law of Foreign State.— Applicability.— Public Policy.*—Where the law of this state is different from the law of a sister state on the same subject, does not warrant the courts of this state in refusing to enforce a right of action arising under the law of the sister state on the ground that it would be against public policy. p. 367.

From Wabash Circuit Court; *Albert Ward,* Special Judge.

Action by Lorin S. Hill against Frank A. Henning. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Herman N. Hipskind,* for appellant.
*Walter S. Bent,* for appellee.

BATMAN, J.—This is an action by appellee against appellant to recover the amount of a commission alleged to be due on a contract for the sale of the latter's farm, situated in the State of Illinois. The contract was made in said state, at a time when both of the parties were residents thereof, but was not in writing. After the alleged sale, which was consummated in said state, appellant became a resident of this state, and was such when this action was commenced. The amended complaint is in a single paragraph to which a demurrer for want of facts was overruled. After issues were joined the cause was submitted to a jury for trial, resulting in a verdict in favor of appellee. Appellant filed a motion for a new trial, which was overruled, and thereupon judgment was rendered in favor of appellee. This appeal challenges the two rulings of the court stated above.

The determination of a single question will be decisive of this appeal. It may be stated thus: May a resident of Illinois enforce in the courts of this state, a parol contract made in that state with a fellow citizen thereof, for the payment of a commission for the sale of real estate therein, where the owner has become a resident of this state after the consummation of such sale, in the absence of any allegation or proof of a statute of Illinois relating to such contracts? Among the reasons urged by appellant, in support of his contention that this question must be answered in the negative, is one based on the last condition stated therein. That condition, however, does not work the result for which appellant contends for the following reasons: We know as a matter of history, that the common law was declared to be a part of the fundamental law of the territory out of which the State of Illinois was formed, and, therefore, in the absence of a showing to the contrary, we must presume that such law is still in force in that state with reference to the contract in question. *Crake* v. *Crake* (1862), 18 Ind. 156; *Cunningham* v. *Jacobs* (1889), 120 Ind. 306, 22 N. E. 335; *Southern R. Co.* v. *Elliott* (1907), 170 Ind. 273, 82 N. E. 1051. We also know that under such law a parol contract for the payment of a commission for the sale of real estate is valid. 19 Cyc 219; *Fischer* v. *Bell* (1883), 91 Ind. 243; *Beahler* v. *Clark* (1903), 32 Ind. App. 222, 68 N. E. 613. With these facts before us we cannot avoid the conclusion, that the contract in question, under the conditions stated, is valid as an Illinois contract, and, being valid in that state, it is equally valid and enforceable in this state, under the principle of comity, unless, as stated by the Supreme Court in the case of *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 74 N. E. 523, 69 L. A. R. 870, 108 Am. St. 324, its "enforcement would be contrary

to good morals, or in violation of public policy, or forbidden by positive law."

This is in accord with the general rule, stated in the earlier case of *Soundheim* v. *Gilbert, Assignee* (1888), 117 Ind. 71, 18 N. E. 687, 5 L. R. A. 432, 10 Am. St. 23. It is clear that a parol contract for the payment of a commission for the sale of real estate is not immoral, and appellant does not so contend. He does contend, however, that the enforcement of such a contract is forbidden by positive law, and cites §7463 Burns 1914, Acts 1913 p. 638, as applied in the case of *Price* v. *Walker* (1909), 43 Ind. App. 519, 88 N. E. 78, in support thereof. That section provides: "That no contract for the payment of any sum of money, or other thing of value, as and for a commission or reward for the finding or procuring, by one person, of a purchaser for the real estate of another shall be valid, unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative  *  *  *  ." In the case last cited this court was asked to hold that a parol contract, made in the State of Kentucky, for the payment of a commission for the sale of real estate and personal property jointly, for a sum in gross, was enforceable in this state, but it refused to do so by holding, in effect, that said §7463 Burns 1914, *supra,* was a positive statute, which would be violated by the enforcement of such a contract. That case supports appellant's contention, but we cannot adhere to it, in the particular stated, for the following reasons: It is obvious that said section has no extraterritorial force, and hence cannot be considered in determining the validity of contracts made in other jurisdictions. It does not purport to limit the application of the principle of comity, but relates to a formality respecting the contracts mentioned therein—a matter governed by the law

of the place where such contracts are made, and not by the law of the forum where their enforcement is sought. 12 C. J. 481; Story, Conflict of Laws (8th ed.) p. 350; *Cochran* v. *Ward* (1892), 5 Ind. App. 89, 29 N. E. 795, 31 N. E. 581, 51 Am. St. 229; *Scudder* v. *Union Nat. Bank* (1875), 91 U. S. 406, 23 L. Ed. 245; *Dacosta* v. *Davis* (1854), 24 N. J. Law 319; *Roubicek* v. *Haddad* (1901), 67 N. J. Law 522, 51 Atl. 938; *Callaway* v. *Prettyman* (1907), 218 Pa. 293, 67 Atl. 418; *Miller* v. *Wilson* (1893), 146 Ill. 523, 34 N. E. 1111, 37 Am. St. 186; *Halloran* v. *Schmidt Brewing Co.* (1917), 137 Minn. 141, 162 N. W. 1082, L. R. A. 1917E 777. Therefore it is clear that said section does not constitute a positive law, which the enforcement of the contract in question would violate.

True, a statute might have been enacted which would have so far changed the rule of comity, as to forbid the courts of this state from enforcing parol contracts for the payment of commission for the sale of real estate, governed by the laws of other states. Such a statute would have been conclusive in favor of appellant's contention, as the enforcement of a contract like the one in question in a court of this state, in the face of such legislative inhibition, would be clearly a violation of positive law. However, said section bears no evidence of any such purpose, and should not be construed as having any such effect. Our conclusion finds support in the case of *Chicago, etc., R. Co.* v. *Thompson* (1906), 100 Texas 185, 97 S. W. 459, 7 L. R. A. (N. S.) 191, 123 Am. St. 798, from which we quote the following: "It is too well settled to require citation of authority that the statutes of a State have no extraterritorial operation, and can not invalidate contracts made and to be performed in other jurisdictions. The courts of this State might be forbidden by the laws of the State, in the absence of con-

stitutional obstacles, to enforce particular contracts, although made in other jurisdictions by the laws of which they would be valid. The rule by which courts of one country test the validity of contracts made and to be performed in other countries, in accordance with the laws of such countries, is one of comity only, and can not be applied in opposition to the positive law of the forum; and if the statute in question disclosed a purpose to change this rule of comity, and to prevent the courts of this State from applying it to contracts made and to be performed out of the State, questions of a different nature might arise. But we can discover nothing of the sort in it. No reference is made to foreign contracts, nor is any command or inhibition concerning them laid upon the courts. Instead, the statute assumes to act directly upon the contracts and stipulations to which it relates, declaring them to be illegal and invalid. This is a sufficient indication that the provisions relate to things the legality and validity of which were under the control of the Legislature, and not to those which were beyond its power and which it could not nullify. For, while the Legislature might set aside the rule of comity by which contracts elsewhere made are enforced by our courts, in conformity with the law governing their making and performance, it could not render those contracts void, and the purpose to do so should not be imputed when it does not appear."

For the reasons stated the case of *Price* v. *Walker, supra,* is disapproved, in so far as it may be construed as holding that a parol contract for the payment of a commission for the sale of real estate, governed by the laws of a sister state, violates said §7463 Burns 1914, *supra.*

Appellant finally contends that the enforcement of a contract like the one under consideration is against the public policy of this state, and hence the decisive

question stated above should be answered in the negative. In considering this contention it should be borne in mind, that the mere fact that the law of this state, with reference to a given subject, is different from the law of a sister state on the same subject, does not of itself warrant the courts of this state in refusing to enforce a right of action, arising under the law of such sister state, on the ground that to do so would be against public policy. 12 C. J. 486; 13 C. J. 256; *Johnson* v. *Chambers* (1859), 12 Ind. 102; *International Harvester Co.* v. *McAdam* (1910), 142 Wis. 114, 124 N. W. 1042, 26 L. R. A. (N. S.) 774, 20 Ann. Cas. 614; *Herrick* v. *Minneapolis, etc., R. Co.* (1883), 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771; *Studebaker Bros. Co.* v. *Mau* (1905), 14 Wyo. 68, 82 Pac. 2; *Rick* v. *Saginaw, etc., Co.* (1902), 132 Mich. 237, 93 N. W. 632, 102 Am. St. 422; *Baltimore, etc., R. Co.* v. *Glenn* (1867), 28 Md. 287, 92 Am. Dec. 688; *Forepaugh* v. *Delaware, etc., R. Co.* (1889), 128 Pa. 217, 18 Atl. 503, 5 L. R. A. 508, 15 Am. St. 672; *Greenwood* v. *Curtis* (1810), 6 Mass. 358, 4 Am. Dec. 145; *Hatcher* v. *Idaho, etc., Co.* (1919), 106 Wash. 108, 179 Pac. 106; *Chicago, etc., R. Co.* v. *Rouse* (1899), 178 Ill. 132, 52 N. E. 951, 44 L. R. A. 410; *Klein* v. *Keller* (1914), 42 Okla. 592, 141 Pac. 1117, Ann. Cas. 1916D 1070; *Chafee* v. *Fourth Nat. Bank* (1880), 71 Me. 514, 36 Am. Rep. 345; *Loucks* v. *Standard Oil Co.* (1918), 224 N. Y. 99, 120 N. E. 198.

As said by the court in the case last cited: "Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We

are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.  Similarity of legislation has indeed this importance: its presence shows beyond question that the foreign statute does not offend the local policy.  But its absence does not prove the contrary.  It is not to be exalted into an indispensable condition.  The misleading word 'comity' has been responsible for much of the trouble.  It has been fertile in suggesting a discretion unregulated by general principles. * * *  The sovereign in its discretion may refuse its aid to the foreign right. * * *  From this it has been an easy step to the conclusion that a like freedom of choice has been confided to the courts.  But that, of course, is a false view. * * *  The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness.  They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."

In a comparatively recent case, the Supreme Court of this state recognized the danger of unnecessarily sacrificing the rights of individuals, through the guise of protecting the interests of the public, by quoting the following statement with approval: "Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy.  Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the trans-

action contravenes some positive statute or some well established rule of law. Other courts have approved the remark of an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. Considerations such as these have led to the statement that the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Hogston* v. *Bell* (1916), 185 Ind. 536, 112 N. E. 883.

Turning, now, to the sources of evidence of what constitutes the public policy of a state with reference to a given subject, as enumerated in the case last cited, viz.: "Its constitution, its statutes, the practice of its officers in the course of administration and the decisions of its courts of last resort," we find nothing in this state, which requires us to condemn the contract in question, as being against its public policy, unless we construe said §7463 Burns 1914, *supra,* as so declaring. A statute may have that effect, as stated in the case of *Vandalia R. Co.* v. *Kelley* (1918), 187 Ind. 323, 119 N. E. 257. But, before so construing a statute, we should be fully convinced of a legislative purpose to effect such result, as the just principles of law, which holds every man to a fair and full performance of his contract, where he has received a valuable consideration, should not be regarded lightly and its application withheld, where doubt exists in that regard. We see no sufficient reason for holding that said §7463 Burns 1914, *supra,* was intended to be declarative of a public policy, which would require the courts of this state to refuse to enforce contracts like the one under consideration, under the principle of comity. This statute, without thus extending its effect, fully protects the interests of all whose contracts for the payment of commissions for

the sale of real estate are governed by the laws of this
state, and we believe its purpose is fully satisfied when
this is done. We do not believe it was intended as
declarative of a public policy, which would permit resi-
dents of other states, who had assumed binding obliga-
tions under the laws thereof, to avoid the rendition of
judgments thereon, when enforcement is sought in this
state, as would result in the instant case if appellant's
contention should prevail. In this we are fully in ac-
cord with the reasoning in the case of *Baer Bros.* v.
*Terry* (1901), 105 La. 479, 29 So. 886, quoted with
approval by our Supreme Court in the case of *Garrigue*
v. *Kellar, supra.* On the general question, as to
whether the contract in question is against the public
policy of this state, we cite the case of *Doney* v. *Laugh-
lin* (1911), 50 Ind. App. 38; 94 N. E. 1027. In that
case this court was required to determine whether parol
contracts for the payment of commissions for the sale
of real estate, were void, or voidable only, under the
provisions of said §7463 Burns 1914, *supra,* prior to its
amendment in 1913, and held that they were of the lat-
ter class, although they are declared therein to be in-
valid. In the course of the opinion the following
statement appears, with citations of authorities in sup-
port of the same: "The words 'void' and 'invalid',
when used in regard to contracts not immoral *nor
against public policy,* usually mean voidable at the op-
tion of one of the parties, or some one legally inter-
ested therein. * * *." (Our italics.) In the light
of this statement it is clear that the conclusion an-
nounced in the case of *Doney* v. *Laughlin, supra,* could
not have been reached if the court was of the opinion,
that parol contracts for the payment of commissions
for the sale of real estate were against public policy,
either by virtue of said statute or regardless of the
same. For the reasons stated we are clearly of the

opinion, that the contract in question is valid as an Illinois contract, and that no reason exists for refusing its enforcement in this state under the principle of comity. We therefore answer the decisive question stated above in the affirmative. It follows that no reversible error was committed in overruling appellant's demurrer to the amended complaint or his motion for a new trial.

Judgment affirmed.