CARIBBEAN MILLS, INC., a Haitian Corporation, Plaintiff,

v.

C. L. McMAHON, Jr., Defendant.

No. 5317.

United States District Court
N. D. Oklahoma.

May 20, 1963.

Jack M. Thomas, Best, Sharp, Thomas & Glass, Tulsa, Okl., and Wilson A. Hanna, Jenkens, Anson & Spradley, Dallas, Tex., for plaintiff.

Villard Martin, Jr., Martin, Logan, Moyers, Martin & Hull, and Robert D. Hudson, Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, Okl., for defendant.

BOHANON, District Judge.

This is an action by Caribbean Mills, Inc., a Haitian corporation, plaintiff, against C. L. McMahon, Jr., defendant, to recover upon nine promissory notes executed by the defendant and one Weesner. The notes were dated April 30, 1960. There were ten notes in all. The first note due sixty days after date was paid. The remaining nine notes have not been paid. Each of the ten notes was for $10,500, with interest at 6 per cent per annum, payable at the Florida National Bank, at Miami, Florida, falling due at sixty-day intervals. The notes meet all the requirements of negotiability. 48 O.S.A. Section 21. Jean F. Laham was the payee in each of the notes. Prior to the maturity of any one of the notes, and for a valuable consideration, they were purchased by Caribbean Mills, Inc. from Laham. The notes were executed in the Republic of Haiti, with place of payment Miami, Florida. No part of the transaction involved the State of Oklahoma or the laws of the State of Oklahoma. The notes were purchased by Caribbean Mills from Laham on or about May 19, 1960. Prior to the purchase of the notes McMahon, the defendant, was notified that Caribbean Mills intended to purchase said notes and he gave his written approval and acknowledged the genuineness of each note and that they would be paid on or before due date at 1201 Main Street, Dallas, Texas.

The defendant asserts that the plaintiff is not a holder in due course; that said notes sued upon are without legal or valid consideration, and that plaintiff, prior to the time it acquired the notes, had knowledge thereof and that said notes are void and unenforceable in an action in the Courts of Oklahoma.

During the first part of the year 1960, defendant was approached by a broker who sought to interest him in purchasing a one-half interest in the Riviera Hotel in Port au Prince, Haiti, and an undivided one-half interest in a cassino or gambling concession in the Republic of Haiti from a man by the name of R. Paul Weesner. Weesner allegedly had an option to purchase the gambling concession. The entire cost to the defendant for this interest at the time was estimated to be between $250,000 and $300,000. A part of the consideration for the overall deal was to be paid in cash and a part in notes. It appears from the evidence that the payee of the notes, Laham, was a personal friend of the President of Haiti

and many of the top Governmental officials. Laham had no official connection with the Government but was at the Presidential Palace a considerable part of his time, and the testimony shows that when the Government of Haiti desired some new industry or changes in existing industries it often engaged Laham to find some person or company interested, for which services he would be paid a commission. After much negotiation an agreement was reached between Weesner and the defendant, and it was understood that the gambling concession would be granted to the defendant and Weesner. It was further understood that Laham would see to it that the gambling concession was granted, and this he did by procuring the necessary certificate or authorization from the Government of Haiti.

On or about April 30, 1960, in Port au Prince, Haiti, a certain sum in cash was paid by the defendant to Weesner, and at the same time the notes in question were executed by the defendant and Weesner to Laham. At the time of the closing of the transaction, the defendant was represented by his counsel from Tulsa, Oklahoma, and also local counsel in the Republic of Haiti. Soon after the execution and delivery of these notes, Laham approached a Mr. Haas, President of the plaintiff corporation, whom he had known for some time, and with whom he had previously done business, and requested that the plaintiff purchase these notes at a discount. Mr. Haas, after consulting his associates in Dallas, Texas, agreed to purchase these notes at a discount of 5½ per cent. This was on or about May 19, 1960, and prior to the due date of the first, or any of the notes. These notes at the discounted rate were paid in cash to Laham in Dallas, Texas. The plaintiff, prior to purchasing the notes, had no knowledge of any infirmities or defects in the notes, but purchased them in good faith and for value. Two of the notes, numbered 9 and 10, were originally endorsed by Laham to one Morisson. It was understood that Morisson was entitled to a certain consideration from the sale of the gambling concession because he was going to be damaged by a cancellation of the existing authority from the Government to operate gambling cassinos. However, all nine of the notes were duly endorsed on the same date by the proper parties to the plaintiff. From the cash received on the discounted notes in Dallas, Texas, Laham received $25,000 and Morisson received payment on his notes, and the remainder of the money was delivered by Laham to a Mr. Barbot, who was allegedly secretary to the President of Haiti and head of the Secret Police. What became of the money delivered to Barbot is not shown by the evidence.

Plaintiff knew that the notes in question were given as part consideration for one-half interest in the Riviera Hotel and one-half interest in the gambling concession. The defendant's position is that since part of the transaction involved a gambling concession, though legal in Haiti, the notes under the law of Oklahoma are void and a violation of public policy; furthermore, under all the circumstances, because of the connection of Laham with the transaction, the notes are void and unenforceable as against public policy. In this connection, the defendant also contends that the plaintiff was having labor troubles in its operations in Haiti and that by the purchase of the ten notes in question the same were solved; and that the purchase of the notes was not made on the strength that they would be paid, but on the proposition that the Haitian Governmental authorities would look with favor upon the business operations of the plaintiff conducted in Haiti. That all such matters constituted a breach of the public policy. The Court is not convinced that the plaintiff's labor troubles, or Laham's connection with the transaction, had anything to do with its purchase of the notes, but on the contrary is convinced that plaintiff purchased the notes as a sound business transaction between it, the

payee and the maker, and that plaintiff would not have purchased the notes but for the letter of C. L. McMahon, Plaintiff's Exhibit 14, which reads as follows:

"

May 17, 1960

"Caribbean Mills Inc.
"1201 Main Street
"Dallas, Texas

"Gentlemen:

"This letter will acknowledge and confirm that you are discounting certain notes issued by myself and R. Paul Weesner, said notes being as follows:

| "NUMBER | DATE | AMOUNT | MATURITY | INTEREST |
|---|---|---|---|---|
| 1 | April 30, 1960 | $10,500. | June 29, 1960 | 6% |
| 2 | April 30, 1960 | $10,500. | August 28, 1960 | 6% |
| 3 | April 30, 1960 | $10,500. | October 27, 1960 | 6% |
| 4 | April 30, 1960 | $10,500. | December 26, 1960 | 6% |
| 5 | April 30, 1960 | $10,500. | February 24, 1961 | 6% |
| 6 | April 30, 1960 | $10,500. | April 26, 1961 | 6% |
| 7 | April 30, 1960 | $10,500. | June 24, 1961 | 6% |
| 8 | April 30, 1960 | $10,500. | August 23, 1961 | 6% |
| 9 | April 30, 1960 | $10,500. | October 22, 1961 | 6% |
| 10 | April 30, 1960 | $10,500. | December 21, 1961 | 6% |

"The total amount of these notes is $105,000. This letter acknowledges and confirms that payment of principal and interest on these notes will be made on or before their respective due dates to Caribbean Mills Inc, 1201 Main Street, Dallas, Texas. These payments will be made at par in U. S. funds in Dallas to Caribbean Mills for the face amount of the notes plus accrued interest to each respective due date.

"Since each of these notes were made out to Jean F. Laham you acknowledge that Jean F. Laham and subsequent endorsements on these notes have been endorsed to Caribbean Mills Inc. prior to delivery to Caribbean Mills Inc. Jean F. Laham and Herbert J. Morisson signify their acceptance of this letter and acknowledge their endorsements to Caribbean Mills Inc by their signatures of acknowledgment below.

"/s/ C. L. McMahon
"/s/ Charles L. McMahon
    "Charles L. McMahon, Jr.

"/s/ Jean F. Laham
"Jean F. Laham

"/s/ H. J. Morisson
"Herbert J. Morisson

"

It should also be observed that the defendant was fully aware of all of the details of the transaction involved and was represented by counsel; that he paid the first note at or about the time when due, and on August 26, 1960, two days prior

to the due date of the second note, the defendant wrote the following letter (Plaintiff's Exhibit 11):

"Mr. Arthur D. Haas
"c/o Caribbean Mills, Inc.
"1201 Main Street
"Dallas, Texas
"Dear Arthur:
"With reference to my conversation of this date, I beg your permission to postpone payment of the discounted note amounting to $10,500 plus interest for at least two weeks. If you would please notify the appropriate departments of this I would be most appreciative.

"I was delighted to have informed you that we did not need and were not asked for the papers. Everything seems to be politically very quiet in Haiti. As far as I can find out, the hotel-casino operation is in solid foundation with the present administration, and they have confirmed verbally the contract, which I mentioned to you, and will re-affirm this by letter which should be forthcoming.

"Thanking you for this kind favor, I remain,

"Yours very truly,
"/s/ C. L. McMahon
"C. L. McMahon, Jr.

"CLMc:ms

■ The law of the place where the contract is made governs its validity. Cf. Brown v. Ford Motor Company, 48 F.2d 732 (10 Cir.); Consolidated Flour Mills Company v. File Bros. Wholesale Co., 110 F.2d 926 (10 Cir.); Simon v. H. F. Wilcox Oil and Gas Company, 123 F.2d 25 (10 Cir.).

■ Gambling in Oklahoma is prohibited by law, but this is no obstacle to the maintenance of this action in the Oklahoma Courts. Cf. Klein v. Keller, 42 Okl. 592, 141 P. 1117; Fist and Others v. La Batte, 69 Okl. 224, 171 P. 1120; Huffman v. Kahn, 167 Okl. 389, 29 P.2d 767; Consolidated Flour Mills Company case, supra.

■ The purchaser of a note, to be charged with notice of an infirmity in the instrument, must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. 48 O.S.1961, Section 126. There is no showing in the evidence in this case that plaintiff had notice of any infirmity or defect, if any, in the instruments, or that it acted in bad faith. In fact, there is no showing that there was any defect in the instruments.

In Sharp v. Dunlap, 176 Okl. 329, 55 P.2d 971, the Court said:

"The defendant did not show that plaintiff had actual knowledge of any fraud practiced upon the defendant in the execution of the notes nor did he produce any evidence to show bad faith of the plaintiff in purchasing the notes. Circumstances which would excite suspicion in the mind of a prudent person are not sufficient in the absence of bad faith, to defeat the rights of one claiming to be a bona fide holder in due course of negotiable paper.

"Defendant's proof on these questions failed, and the court should have directed a verdict in favor of the plaintiff."

In Eash v. Pence, 121 Okl. 7, 246 P. 1091, the Court in the second syllabi said:

"A promissory note obtained by duress is voidable only at the instance of the oppressed party, and, where such party long afterwards makes a payment of the interest on said note and secures an extension in the payment of the principal thereon, such acts constitute a ratification of the contract, and such party is thereafter estopped from escaping liability on said instrument by pleading that the note was secured by duress."

So, in this case, the facts show that plaintiff is a bona fide purchaser of the notes in question in due course, and that it had no notice of any infirmity in the

notes. The evidence further clearly shows that the first note was paid and later after the defendant had the hotel and cassino in operation, asked for and received an extension of time to pay the second note.

Under all the facts and the law, plaintiff is entitled to judgment on each of these notes in the full amount, with interest, from the date thereof until paid, and an attorney's fee in the sum of 10 per cent of the face amount of each note.

Judgment will be entered accordingly.