## HAYS v. KING.

No. 3943.    Opinion Filed October 27, 1914.

(143 Pac. 1142.)

1.    COURTS—Jurisdiction of Cause. In so far as jurisdiction is concerned, a surety on a guardian's bond, executed in Arkansas pursuant to the laws of that state, may, upon his removal thereafter to Oklahoma, be sued in the courts of Oklahoma for for a breach of the bond.

2.    CONTRACTS—Construction of Foreign Contract—What Law Governs. Where a contract made in a foreign state is sought to be enforced in another state, the **lex loci contractus** controls the construction of the contract, except where it provides otherwise, and the laws of the state where the contract was made will be observed, of course being pleaded when necessary, in determining the rights and obligations of the parties, and effect given thereto, unless such foreign laws are irreconcilable with the local laws, or conflict with the established policy of the enforcing state.

3.    SAME. There is a wide difference between putting a foreign statute in active operation and treating a transaction of which the court has jurisdiction as it is modified, affected, or characterized by the law that operated upon it where it took place.

(Syllabus by Brewer, C.)

*Error from District Court, Tillman County;*

*Frank Mathews, Judge.*

Action by Rachel Hays against H. R. King. Judgment for defendant, and plaintiff brings error. Reversed.

*Wilson & Roe,* for plaintiff in error.

*Mounts & Davis* and *H. P. McGuire,* for defendant in error.

Opinion by BREWER, C.   This suit was instituted in the district court of Tillman county by Rachel Hays, upon attaining her majority, against H. R. King, as surety on the bond of plaintiff's guardian.   It is disclosed in the petition that one Sawyer was appointed guardian of the plaintiff by the probate court of Clay county, Ark., and that the defendant King signed his bond as such guardian, conditioned that the said guardian should faithfully discharge his duties as such according to law; that the said guardian received the funds and property belonging to plaintiff, and failed to account for same, and that the probate court in Arkansas settled the accounts of said guardian, and found and adjudged that he had in his hands $511.87 belonging to the plaintiff, as his ward, and directed and ordered him to pay the same, and that said guardian had wholly failed to pay to his ward any part of said sum; that at the time said order was made the defendant King was a nonresident of the state of Arkansas, and has remained such ever since, having moved to this state; that the guardian had died, leaving no estate from which the amount due by him could be collected; and that, unless the plaintiff could collect the amount due her by her deceased and insolvent guardian from the defendant, according to the tenor of his bond, she would be utterly remediless.   The defendant was brought into court in the county where he resides by proper service of process, and he filed a demurrer to the plaintiff's petition, which was sustained by the court, on the ground, as stated, that the court was without jurisdiction of either the person of the defendant or of the subject-matter of the action.   The plaintiff, feeling aggrieved at this action, has appealed to this court, and the sole question presented by the record is:  Have the courts of this state jurisdiction of an action on a guardian's bond executed, and the breach of which occurred, in the state of Arkansas?

Before proceeding to look into the legal questions involved, it may be well to mention the situation this case presents.  This plaintiff, then a minor living in Arkansas, had her small estate turned over to a guardian upon the faith of the promise of de-

fendant to answer for that guardian's conduct in caring for her estate, and delivering whatever might remain of it to her at her majority. The guardian squandered the estate, then died utterly insolvent, and his surety on the bond moved to Oklahoma. If the surety cannot be sued here, he cannot be sued anywhere. If the plaintiff cannot recover from him in the place to which he has voluntarily come, she must lose her patrimony; and this presents a situation of importance, not only to this plaintiff, but to the people of both Arkansas and Oklahoma, for, if the courts have not jurisdiction in a suit on a guardian's bond, neither would they have on the bonds of administrators, executors, or other official bonds, executed in pursuance of, and whose obligation rests in, the statute law of such other state. If this plaintiff must lose her estate through no fault of her own, but simply because the defendant has chosen to become a citizen of Oklahoma, then it would seem that we have found a situation where neither law nor equity is adequate to meet the ends of justice; and we are not willing to admit the existence of this condition, and it can be avoided without doing violence to thoroughly established principles.

The trial court, in sustaining the demurrer on the grounds taken, doubtless had pressed upon it the statement found in 15 A. & E. Ency. Law, 120:

"A guardian's bond required and given under the laws of one state is purely local in its obligation, and will not be enforced by suit in another state"

—and the one of somewhat similar import in 29 Cyc. 1462, 1463, and in Murfree on Official Bonds, sec. 478. The text found in the above books is deduced from, and seems to rest almost solely upon, the doctrine of *Pickering v. Fisk,* 6 Vt. 102, and the later case of *Judge of Probate v. Hibbard,* 44 Vt. 597. An examination of the case of *Pickering v. Fisk, supra,* convinces us that its holding does not justify so comprehensive a statement as that quoted above, as will be shown by the following excerpt from that case:

Opinion of the Court.

"We do not decide, nor ought it to be so understood, that no action can, under any circumstances, be sustained by us upon a bond of this kind, denominated official, executed in another state. There are doubtless many cases where an action on such an instrument would be sustained. For instance, a bond for the liberties of a prison, executed under our law, might very properly be enforced in another state, although executed to the sheriff in his official capacity, and in that sense an official bond; and so, *e converso,* a similar bond, executed abroad, would be enforced here. And even the bond in question might be enforced here, under certain circumstances. Supposing the sheriff to have purloined the funds of the state intrusted to his official care, and an action to be brought here, we might well treat the plaintiff as a trustee for the state, and permit a recovery. But in these cases we merely give effect to the instrument as a contract recognized by the common law, agreeably to the rules and course of proceeding derived from that law. Wherever a bond, although taken in pursuance of a statutory provision, is left, as to its operation and effect, to be governed by common-law rules, there can be no obstacle to enforcing it anywhere, like any other instrument of the kind. What we decide is this: When an official bond is, by the law of the state where it is executed, to have effect only in a particular way, and to be enforced only in a particular mode pointed out by these laws, the enforcing it in that mode is the exclusive province of the tribunals of that state. In this instance, the person for whose benefit the suit is brought is a stranger to the bond, and, at common law, could sustain no action upon it. The statute of New Hampshire, giving him a remedy, is a mere local regulation affecting the judicial proceedings of that state. It is not directory to us, nor can we, consistently with established rules, assume the duty of enforcing it."

It seems to us that the real reason underlying the refusal of the Vermont court to enforce the official bonds executed in New Hampshire, by the sheriff in the Pickering case, and by a guardian in the Hibbard case, is found in the fact that the remedy for breaches of the bonds is a *peculiar and particular one prescribed by statute, and not known to the common law, nor to the law of Vermont.*

In the instant case no such difficulty is encountered. The remedy on a guardian's bond in Arkansas may be by suit at law

based thereon alleging a breach of the conditions of the bond. *Norton v. Miller*, 25 Ark. 118; *Moren et al. v. McCowen et al.*, ·23 Ark. 93. The procedure is substantially the same as in Oklahoma. The suit is founded on contractual liability. The surety contracted to answer for the guardian's failure to perform his duty; his duty was to pay over to the minor funds in his hands belonging to her at her majority. The allegation is that the bond was breached by the failure of the guardian to do so, and that the plaintiff has been damaged to the extent of such failure. We are not called upon to enforce, or to put into active operation, the statutes of Arkansas. We only look to them to see the effect, and to find the proper construction, of the contract. This we have a right to do under the doctrine of comity. As said in the case of *Crippen v. Laighton*, 69 N. H. 540, 44 Atl. 538, 46 L. R. A. 467, 76 Am. St. Rep. 197:

"There is a wide difference between putting a foreign statute in active operation and treating a transaction of which the court has jurisdiction as it is modified, affected, or characterized by the law that operated upon it where it took place."

Where a contract made in a foreign state is sought to be enforced in another state, the *lex loci contractus* controls the construction of the contract, except where it provides otherwise, and the laws of the state where the contract was made will be observed, of course being pleaded when necessary, in determining the rights and obligations of the parties, and effect given thereto, unless such foreign laws are irreconcilable with the local laws, or conflict with the established policy of the enforcing state. We see no insurmountable difficulty in undertaking to find out the obligation, and the fact, or extent, of a breach of a bond, simply because it is given in conformity to, and its obligation rests in, a statute of another state. We observe and give effect to the laws of other states in the construction of notes and other written contracts. Those laws are usually facts to be proven in a given case, and the court, with the foreign contract in hand and the law of its origin in evidence, determines the question of liability and the extent thereof. This can certainly be

done in the case of statutory bonds, without the risk of an erroneous misunderstanding of the foreign law being greater than the hardship and failure of justice to be brought about by refusing to undertake the task.

We do not feel that it would accord with the policy of this state, expressed in its Constitution (section 6, art. 2), which guarantees certain remedy for every wrong, to offer asylum, with what would amount to exemption from liability, to the sureties on the various bonds, given by a variety of statutory trustees, in other states. The eastern half of this state has more children under legal guardianship, very likely, than a like population has anywhere else in the United States, for the reason that every Indian child has a valuable estate in its own right, and if the many thousands of such bondsmen in Oklahoma could, when local liability has been fastened onto them, escape the same by moving, with their effects, across a state line, we fear there would be many instances where our own minors would be left penniless and remediless. Should we so hold, we might expect a similar holding when our bonds are sought to be enforced by our sister states. So we hold that, so far as jurisdiction is concerned, a surety on a guardian's bond, executed in Arkansas, pursuant to the laws of that state, may, upon his removal thereafter to Oklahoma, be sued in the courts of Oklahoma for a breach of the bond.

This holding requires a reversal of the case.

By the Court: It is so ordered.