NATIONAL LIFE & ACCIDENT INS. CO. v. WHITLOCK.

No. 32330. Nov. 26, 1946.

Rehearing Denied May 13, 1947.

*180 P. 2d 647.*

Biddison & Rheam, of Tulsa, for plaintiff in error.

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for defendant in error.

OSBORN, J. This is an action to recover on a policy of life insurance, brought by the plaintiff, Donis H. Whitlock, beneficiary in the policy, against the defendant Insurance Company. Defendant, at the close of the evidence, moved for an instructed verdict, which motion the trial court denied, and the case was submitted to a jury, which returned a verdict for plaintiff. Judgment was rendered on the verdict, and defendant appeals.

The decisive question presented is whether the trial court erred in denying defendant's motion for an instructed verdict.

Essential facts established by the evidence were that the application for the policy was executed by Cecil Herman Whitlock, husband of the beneficiary, on September 8, 1942, at El Paso, Tex.; that no medical examination of Whitlock was made, and the application showed him to be in good health; that L. N. Smith was the soliciting agent of defendant in procuring the application; that the policy was issued by the home

office of defendant in Nashville, Tenn., and delivered by Smith to Whitlock in El Paso, Tex., on September 21, 1942; that at and prior to the time the policy was delivered Whitlock was afflicted with pulmonary tuberculosis, and that after the signing of the application, but prior to the delivery of the policy, Smith had notice or knowledge of Whitlock's condition; that Whitlock died in Tulsa, Okla., of pulmonary tuberculosis, on April 15, 1943; that defendant had no notice or knowledge that Whitlock was suffering from tuberculosis, unless the knowledge of Smith be imputed to defendant, until after Whitlock's death, and that upon learning that his death was caused by that disease defendant tendered to plaintiff the premiums received by it and denied that the policy had ever been in force.

The application and policy were put in evidence, and both appear in the record. Paragraphs 5 and 6 of the policy are as follows:

"(5) Effective Date — This policy shall take effect on the date of issue, provided the insured is then alive and in sound health, but not otherwise.

"(6) Entire Contract — This policy constitutes the entire agreement between the parties hereto. All matter printed or written on the following pages of this policy are a part of this contract as fully as if recited over the signatures hereto. All statements made by the insured or on his behalf shall, in the absence of fraud, be deemed representations and not warranties. No agent shall have the power or authority to waive, change or alter any of the terms or conditions of this policy, nor shall it be changed in any manner except by endorsement signed by the President or Secretary."

The application contains a provision similar to the last sentence in paragraph 6 of the policy.

Defendant contends that the evidence conclusively established that Whitlock, at and prior to the time the policy was issued and delivered, was afflicted with tuberculosis, and that under the law of

Texas, which defendant specifically pleaded as applicable in an amendment to its answer, and admitted in evidence, such proof was a complete defense to the action. Plaintiff asserts that the evidence was such that the trial court properly submitted it to the jury.

Defendant produced and read in evidence the depositions of two physicians of El Paso, Tex. One of these physicians examined Whitlock on September 12, 1942, and the other examined him on September 21st of the same year. Each testified positively that at the time he examined Whitlock the latter was afflicted with pulmonary tuberculosis. Dr. Laws, who examined him on September 21st, was medical director of the tuberculosis control work of the City-County Health Unit, and medical director of the tuberculosis department of the City-County Hospital at El Paso. He testified that when he examined Whitlock he found him suffering from active pulmonary tuberculosis; that his case was rather far advanced; his judgment was that Whitlock had been so afflicted for at least a year prior to the time he examined him, and that although given treatments, he grew progressively worse.

The physician who examined Whitlock on September 12th took an X-ray photograph of his chest. He testified that the X-ray showed that Whitlock was suffering from tuberculosis, and had been so afflicted for from six to twelve months previously. The testimony of these physicians is positive and unequivocal. The testimony of a Tulsa physician, who examined the X-ray photograph above mentioned, was that it showed that Whitlock had had the disease for at least a year before the photograph was made. A certificate of Whitlock's death, made by a physician who attended him in Tulsa, stated that death was caused by pulmonary tuberculosis.

The testimony of the physicians is not contradicted except by the testimony of plaintiff that her husband was in

good health at the time the policy was delivered, and working steadily, and that he did not consult the physicians prior to the delivery of the policy; that he became ill shortly after the policy was delivered, and never recovered. She could not remember dates, but testified that the visits to the physicians, and the beginning of her husband's last illness, all occurred "somewhere about the middle of September". Her testimony that her husband did not consult the physicians until after the policy was delivered is contradicted by Smith, upon whose testimony plaintiff bases her contention of estoppel hereafter referred to. He testified that before he delivered the policy Whitlock told him that the doctors said he had tuberculosis but he did not believe it. It is also contradicted by the records made by the physicians, copies of which were attached to their depositions. But the testimony of the medical witnesses that Whitlock had been afflicted for at least a year prior to their examination made the question of whether he was examined before the policy was delivered, or shortly thereafter, of no importance. In either event, from their testimony he was so afflicted when the policy was delivered.

It is clear that the testimony of plaintiff that her husband was in good health was a conclusion, or the expression of an opinion, upon a matter as to which she was not qualified to judge. That was a question which could be determined only by skilled medical practitioners or professional men of scientific ability in the diagnosis and treatment of the disease. It could not be determined from the testimony of unskilled witnesses. Inter-Ocean Oil Co. v. Marshall, 166 Okla. 118, 26 P. 2d 399; Ft. Smith & Western Ry. Co. v. Hutchinson, 71 Okla. 139, 175 P. 922. The general rule is that in cases like the instant case, where the question is whether the insured was in sound health at the time the policy was issued, the liability of the insurer is determined by the actual or real condition of the insured, not by his apparent health, or anyone's belief or opinion

as to his health. 37 C.J. 404, §78; Old Surety Life Ins. Co. v. Hill, 189 Okla. 250, 116 P. 2d 910; 40 A.L.R. 662, note. Plaintiff, because of her lack of skill or scientific knowledge, could only testify to her opinion as to his apparent health. Plaintiff's inability to testify as to her husband's real condition is shown in the record, for, when asked if her husband did not die from tuberculosis, she stated that she did not know, that the doctor told her he did.

We think the evidence conclusively established that when the policy was issued and delivered Whitlock was not in sound health, but was afflicted with the disease which thereafter caused his death. There was no competent evidence to the contrary which required submission of that question to the jury.

The policy having been delivered in the State of Texas, that state was the place where the contract was made, and the law of that state governs. Mortgage Bond Co. v. Stephens, 181 Okla. 182, 72 P. 2d 831; Security Trust & Savings Bank v. Gleichmann, 50 Okla. 441, 150 P. 908. The application for the policy herein specifically so provides. The Texas decisions pleaded by defendant, and admitted in evidence, hold that where the policy provides that it shall not take effect unless the insured is in good health, or sound health, such provision is valid and binding, and that the insurer is not liable on the policy if at the time the policy was delivered the insured was not in good health. In Great Nat. Life Ins. Co. v. Hulme, 124 Tex. 539, 136 S. W. 2d, 602, the Supreme Court of that state said:

"A stipulation in application for life insurance that policy should not take effect unless insured is in good health when policy was delivered is valid, and prevents policy from becoming effective if insured, when policy is delivered, is afflicted with a disease or infirmity which increases risk under policy."

In American Nat. Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W. 2d, 294, the same rule is announced, and many authorities

564

are cited in support of that statement. See, also, Willis v. Texas Prudential Ins. Co. (Tex. Civ. App.) 101 S.W. 2d, 857; National Life & Acc. Ins. Co. v. Logan (Tex. Civ. App.) 150 S.W. 2d, 133; Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W. 2d, 623.

Plaintiff cites no Texas case holding to the contrary. Defendant's contention must be upheld, unless the estoppel asserted by plaintiff precludes it from making such defense.

Plaintiff contends that the knowledge of the soliciting agent, Smith, that Whitlock was afflicted with tuberculosis, is or was imputed to defendant, and that the delivery of the policy, and collection and retention of premiums thereon by defendant with such knowledge, estops defendant now to assert that the policy never became valid and binding because Whitlock was not in sound health. Plaintiff relies upon National Aid Life Association v. Clinton, 176 Okla. 372, 55 P. 2d 781, and other similar decisions by this court, holding that where an insurance agent, acting within the scope of his authority, inserts false answers in an application for insurance, the knowledge of the true facts imparted to or ascertained by the agent will be imputed to the company, so that if it thereafter issues the policy, and collects and retains the premiums thereon, it will be estopped to assert that the statements in the application were false. We do not consider these decisions applicable or controlling.

We have set forth above the provisions in the policy and application that no agent of defendant could waive, change, or alter any of the terms or conditions of the policy. The Texas statute pleaded by defendant and admitted in evidence specifically denied to the agent "power to waive, change or alter any of the terms or conditions of the application or policy". (Art. 5063, Rev. Civ. Stat. of Texas of 1925.) The Texas decisions, also admitted in evidence, hold that knowledge on the part of the soliciting agent that the insured is not

in sound health when the application is made or the policy delivered does not preclude defendant from asserting such defense.

In Great Nat. Life Ins. Co. v. Hulme, supra, the court said:

"Where soliciting agent had no authority from company to make insurance contract, no agreement made by him, fraud perpetrated by him, or knowledge possessed by him could be given effect to modify stipulation of life policy requiring that insured be in good health when policy was delivered."

"An insurance company did not consent to modify stipulation requiring delivery of policy while insured was in good health by excepting heart trouble, notwithstanding that insured told soliciting agent that insured had heart trouble, where company was ignorant of fact that insured had heart trouble and did nothing to signify that it had consented to such modification, especially in view of statute providing that policy and application should constitute entire contract."

To the same effect are the decisions in Willis v. Texas Prudential Ins. Co., supra; National Life & Accident Ins. Co. v. Logan, supra, and numerous other cases. Plaintiff cites no Texas cases supporting her contention. The evidence of defendant showing that the knowledge of the agent was not imparted to its officers is undisputed, and no contention is made by plaintiff that any officer or agent of defendant, other than Smith, was given such information. We hold that the knowledge of Smith was not, under the statute and decisions above cited, imputed to defendant, and it was not estopped to assert that the policy was of no force and effect.

The trial court erred in refusing to instruct a verdict for defendant.

Reversed, with directions to render judgment for defendant.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, and DAVISON, JJ., concur. RILEY, J., dissents.

RILEY, J. (dissenting). The issue involved is whether a policy of life insurance issued September 21, 1942, on condition that insured was in good health, is ineffective at suit of the beneficiary after the death of insured (April 15, 1943) where insurer's agent had knowledge at the time of delivery of the policy that insured was not in good health but it does not appear that insured had such knowledge. The policy provided:

"All statements made by insured, or on his behalf shall, in the absence of fraud, be deemed representations and not warranties."

The cause being submitted to a jury and determined favorably to the beneficiary, it must be concluded that insured was not guilty of fraud. Likewise, disputed facts as to the time of physical examinations of insured are resolved.

Insurer's agent testified that though informed of insured's true condition prior to delivery of the policy, he did not believe the information given him.

The judgment should be affirmed. Affirmation may be based either upon estoppel or the absence of fraud upon the part of insured. The mere fact that at the time of contract insured had a latent disease, which subsequently caused his death, should not impair obligations of the contract.

Paradoxically as it may seem, the very minute a person begins to live, he begins to die, and though at birth the seeds of death are implanted within each mortal being, none, in the absence of fraud, are without right to enter into binding contracts as against the contingencies of death. Insurer, through its agent, knowingly and as assurer, for hire, assumed the risk. It should fulfill its obligations.

The rule stated in the Texas case (Great Nat. Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W. 2d 602) is the general rule in Oklahoma and elsewhere, but there are exceptions and limitations to all rules. National Aid Life Ass'n v. Clinton, 176 Okla. 372, 55 P. 2d 781. I would assume authority of the soliciting agent to act as he did, for wrong on his part will not be inferred. I would then impute to the insurer the agent's knowledge of insured's true state of health and so, under the doctrine of estoppel, avoid the contention that the policy of insurance is ineffective.