Jeanne Armsted RHODY and Donnell Rhody, Plaintiffs-Appellants,

v.

STATE FARM MUTUAL INSURANCE COMPANY, Defendant-Appellee.

No. 83–2065.

United States Court of Appeals, Tenth Circuit.

Aug. 30, 1985.

We find that, where a contract does not indicate a place of performance, the doctrine applies, and the law of the place where the contract is made governs its interpretation. In this case, the contract is silent as to its place of performance; therefore, Texas law must apply. Accordingly, we affirm the district court's grant of partial summary judgment in favor of appellee as well as its denial of appellants' motion for summary judgment in their favor.

Appellants, Jeanne Armsted Rhody and Donnell Rhody, are Texas residents. On March 1, 1981, their son, Donnell Rhody, Jr., was fatally injured in a head-on collision between his car and another automobile in Oklahoma City, Oklahoma. The driver of the second vehicle, an Oklahoma resident, carried no public liability insurance. Appellants filed suit against appellee, State Farm Automobile Insurance Company, seeking to recover benefits under the uninsured motorist coverage included in an insurance policy issued to them by appellee's agent in Texas. State Farm did not dispute its liability under the policy, but it did dispute the amount of recovery.

At the time of the accident, Donnell Rhody, Jr., was a resident of the state of Oklahoma. He was employed in Oklahoma during the two and one-half years that he resided in the state. He had an Oklahoma driver's license and garaged his car at his Oklahoma residence. The car was originally purchased in Oklahoma by his mother, appellant Jeanne Armsted Rhody. While title to the automobile remained in the mother's name, the son was in the process of purchasing the automobile at the time of his death.

Donnell Rhody, Jr., was insured under his parents' State Farm policy, and his car was listed in the policy along with two other automobiles garaged at appellants' Texas residence. At the time the insurance policy was issued, the State Farm agent from whom appellants purchased the policy knew that the son's car would be garaged at his Oklahoma residence. For each of the three vehicles listed, the policy provided

Howard K. Berry, III, Oklahoma City, Okl. (Howard K. Berry, Jr., Oklahoma City, Okl., on briefs) of Berry & Berry, P.C., Oklahoma City, Okl., for plaintiffs-appellants.

Brian M. Dell of Speck & Dell, Oklahoma City, Okl., for defendant-appellee.

Before McKAY, BREITENSTEIN and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The issue presented by this diversity action is whether, under Oklahoma conflict of laws rules, Texas or Oklahoma law should be applied to determine the benefits due appellants under an uninsured motorist policy issued by appellee. The precise question to be answered is whether Oklahoma applies the doctrine of *lex loci contractus* in an action arising from injuries sustained in Oklahoma by an Oklahoma resident who is insured under a policy issued in Texas.

**1418**

uninsured motorist coverage in the amount of $10,000.

This suit was filed because Oklahoma law provides for "stacking" of uninsured motorist coverage. Stacking permits the total amount of uninsured motorist coverage provided for all vehicles listed in an insurance policy to be applied to the damages resulting from an accident involving only one of the vehicles. Texas law makes no provision for stacking. Therefore, if Oklahoma law is applied to determine the proceeds of appellants' uninsured motorist coverage, appellants will receive $30,000, the total amount of coverage provided for the three vehicles listed in their policy.[1] Under Texas law, appellants are only entitled to the $10,000 individual coverage provided in the policy for their son's car.

Appellants moved the district court to grant summary judgment that Oklahoma law applies to determine their benefits under the insurance policy. State Farm moved for summary judgment that Texas law applies. After determining that Oklahoma conflict of laws rules require the application of the law of the state in which an insurance policy was made and executed, the district court held that Texas law applies. Consequently, the court granted State Farm's motion for summary judgment.

## I.

■ The conflict of laws rules of the forum state, Oklahoma, must be applied to determine whether Texas or Oklahoma law governs the interpretation of the appellants' insurance policy. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 1020, 85 L.Ed. 1477 (1941). In the instant case, however, the parties dispute the nature of the rule in Oklahoma to resolve conflict of laws problems in contract cases. State Farm contends that *lex loci contractus*, which pro-

vides that matters bearing upon the interpretation, execution, and validity of a contract are to be determined by the law of the place where the contract is made, has been adopted and repeatedly affirmed by the Oklahoma courts. In addition, State Farm argues that this rule is also embodied in Okla.Stat. tit. 15, § 162 (1971), which states:

> A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

Since the insurance policy was issued and executed in Texas, State Farm reasons that Texas law must govern its interpretation.

■ Appellants argue that *lex loci contractus* is outmoded as a conflict of laws rule. Appellants contend that, if the recent trends in the substantive law of Oklahoma are carefully examined, a shift from rigid conflict of laws doctrines like *lex loci contractus* to an interest or contacts analysis becomes evident. Under the interest analysis approach, the laws of the state with the most significant or substantial relationship to the parties and the transaction underlying the lawsuit must govern the dispute.[2] In support of their argument, appellants point to *Brickner v. Gooden*, 525 P.2d 632 (Okla.1974) in which the Oklahoma Supreme Court adopted the most significant relationship test for the resolution of conflict of laws problems in tort cases. Appellants also rely on *Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039 (Okla.App. 1980), where that contacts test was adopted in the context of contracts for sales covered by the Uniform Commercial Code. Appellants conclude, under the most significant relationship test, Oklahoma has a greater relationship to the instant dispute than any other state. Thus, Oklahoma law must be applied to determine benefits under their insurance policy.

---

1. The parties have stipulated that the appellants' damages resulting from the wrongful death of their son exceed $30,000.

2. Appellants cite various sections of the Restatement (Second) of Conflict of Laws (1971), including §§ 145, 188, 191, and 193, for the formulation of the rule they contend to have been adopted by the Oklahoma courts.

No Oklahoma court has ruled on the precise conflict of laws question presented by the facts in this case. Where there is no authoritative decision of a state court on an issue under purely local law, great deference must be paid to the views of a federal judge who is familiar with the local law and practice. *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Township of Hillsborough v. Cromwell,* 326 U.S. 620, 629–30, 66 S.Ct. 445, 451, 90 L.Ed. 358 (1946); *Huddleston v. Dwyer,* 322 U.S. 232, 237, 64 S.Ct. 1015, 1018, 88 L.Ed. 1246 (1944); *Budde v. Ling-Temco-Vought, Inc.,* 511 F.2d 1033, 1036 (10th Cir.1975); *Binkley v. Manufacturers Life Ins. Co.,* 471 F.2d 889, 891 (10th Cir.1973). The Supreme Court has demonstrated reluctance "to overrule decisions of federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable." *Propper v. Clark,* 337 U.S. 472, 486–87, 69 S.Ct. 1333, 1342, 93 L.Ed. 1480 (1949). Here, a United States district judge sitting in Oklahoma determined that the Oklahoma courts have not adopted the most significant relationship test in contract actions, despite their application of that test in tort cases and in the context of sales covered by the Uniform Commercial Code. Absent a demonstration that this conclusion is unreasonable, we pay it deference and are reluctant to overrule.

Appellants' arguments regarding the existence of a trend in Oklahoma toward the adoption of an interest analysis approach to conflict of laws problems do not compel the conclusion that the district court's application of *lex loci contractus* is unreasonable. In fact, the district court's holding is consistent with the cases cited by appellants in support of their argument. In *Brickner v. Gooden, supra,* for example, the Oklahoma Supreme Court adopted the most significant relationship test *only* in the context of tort actions. Four years after *Brickner,* the Oklahoma Supreme Court reiterated that in contract actions, the law of the place where the contract is made governs with respect to its nature, validity, and interpretation. *Telex Corp. v. Hamilton,*

576 P.2d 767, 768 (Okla.1978). Two years after *Telex,* in *Collins Radio Co. of Dallas v. Bell, supra,* the Oklahoma Court of Appeals recognized that the rule generally invoked in contract cases is the choice of law rule embodied in Okla.Stat. tit. 15, § 162 (1971). The court, however, chose to apply the most significant relationship test to a contract for a sale covered by the Uniform Commercial Code only because it found the specific choice of law rule provided in U.C.C. § 1–105 superseded the general rule under Okla.Stat. tit. 15, § 162 (1971).

After examining the cases upon which appellants rely, we find no indication of a trend toward the adoption of the most significant relationship test in Oklahoma law. Accordingly, we agree with the district court's conclusion that the Oklahoma courts have not adopted the most significant relationship test as the conflict of laws rule for contract actions.

## II.

Appellants argue that if we reject the most significant relationship test, we must examine the place of performance of the insurance policy, as well as the place where the policy was issued and executed, in determining whose law will apply in the interpretation of the policy. Appellants contend that Okla.Stat. tit. 15, § 162 (1971), should be read to mean the law of the place of performance of a contract governs its interpretation if the contract indicates a place of performance. Only, if the contract is silent as to the place of performance, will the law of the place where the contract was made be applied.

Relying on a Montana case interpreting an identical statute, *Kemp v. Allstate Insurance Co.,* 183 Mont. 526, 601 P.2d 20 (1979), appellants conclude that the place of performance of an insurance policy which provides uninsured motorist coverage for an accident occurring anywhere in the United States and Canada is the place where the liability of the uninsured motor-

**1420**

ist is determined.[3] Because Oklahoma is the only forum which could have subjected the uninsured motorist responsible for the death of Donnell Rhody, Jr., to service of process, appellants reason that Oklahoma is the place of performance of State Farm's obligations to appellants.[4]

We believe the language of Okla. Stat. tit. 15, § 162 (1971), compels a reading which restricts application of the law of the place of performance of a contract to cases in which the *place of performance is indicated in the contract.* Appellants' insurance policy does not indicate a place of performance within the meaning of that statute. An examination of the authorities which address conflict of laws questions commands this conclusion.[5] The Oklahoma courts have enforced contract clauses which specifically designate a place of performance or which provide that the law of a particular jurisdiction will apply. *Paclawski v. Bristol Laboratories, Inc.,* 425 P.2d 452 (Okla.1967); *Legg v. Midland Savings and Loan Co.,* 55 Okl. 137, 154 P. 682 (1916). We have recognized the implied intent of contracting parties that the law of a certain jurisdiction control their contractual obligations from their conduct or from certain language in the contract. *Mississippi Valley Trust Co. v. Oklahoma Ry. Co.,* 156 F.2d 283 (10th Cir.1946); *Consolidated Flour Mills Co. v. File Bros. Wholesale Co.,* 110 F.2d 926 (10th Cir. 1940). In the context of insurance policies, we have held that the specification of a place for payment of premiums and benefits under the policy signifies the parties' designation of that location as the place of

performance of the contract. *Monahan v. New York Life Ins. Co.,* 26 F.Supp. 859 (W.D.Okla.), *aff'd,* 108 F.2d 841 (10th Cir. 1939); *Head v. New York Life Ins. Co.,* 43 F.2d 517 (10th Cir.1930).[6] Absent any such specific manifestation of intent to be bound by the laws of a particular jurisdiction, the law of the place where the contract was made governs interpretation of the contract. *Telex Corp. v. Hamilton, supra; National Life & Accident Ins. Co. v. Whitlock,* 198 Okl. 561, 180 P.2d 647 (1946); *Marx v. Heffner,* 46 Okl. 453, 149 P. 207 (1915); *Hays v. King,* 44 Okl. 180, 143 P. 1142 (1914).

In the instant case, there is no indication, express or implied, that the parties intended to be bound by the laws of a particular jurisdiction. The record is devoid of evidence that a location for payment of benefits or premiums was specified by the parties. We are not persuaded that the extension of coverage under the policy to encompass the United States and Canada means, as appellants contend, that the parties intended the place of performance to be wherever the insurer's obligation to pay benefits is established. Because no place of performance is indicated, the law of the place where the policy was made must govern the interpretation of uninsured motorist benefits due appellants. The policy was issued to appellants in Texas by State Farm's agent in that state. Thus, the laws of the state of Texas, which do not provide for stacking of uninsured motorist coverage, apply to determine State Farm's liability to appellants.

3. In *Kemp,* the Montana Supreme Court concluded that Allstate's policies contemplate that an accident covered by the policy in question, which included uninsured motorist coverage, could occur in any state. From this conclusion, the court reasoned that the state in which a judgment against an uninsured motorist is obtained is the place of performance of the insuror's obligations under the contract. We are unpersuaded.

4. Unlike the situation presented by *Kemp, supra,* no judgment was obtained against the uninsured motorist responsible for the accident.

5. While many Oklahoma cases do not appear to rest directly on the statute, the majority follow the rule it embodies. *See* Webster, *Contractual Obligations,* Conflicts of Law Symposium, 18 Okla.L.Rev. 385 (1965).

6. Both *Head* and *Monahan* involved life insurance policies. The policies stated that premiums and benefits were payable at the insuror's head office in New York. The *Head* case, which was appealed from the U.S. District Court for the Western District of Oklahoma, concerned the death in Oklahoma of the insured, who was in business in Oklahoma. *Monahan* involved the death of an Arkansas resident.

In holding that Texas law applies, we necessarily reject appellant's argument that application of a law which does not provide for stacking of uninsured motorist coverage is inimical to established public policy in Oklahoma. Adoption by the Oklahoma legislature of a provision for stacking uninsured motorist coverage and enforcement of that provision by the Oklahoma courts in cases which do not involve conflict of laws questions do not endow stacking with sufficient prominence to establish it as public policy in Oklahoma. The situation here may be compared to cases in which Oklahoma courts have enforced foreign contracts which would have been clearly illegal if made in Oklahoma. *See, e.g., Klein v. Keller*, 42 Okl. 592, 141 P. 1117 (1914). Accordingly, the judgments of the district court are affirmed.

McKAY, Circuit Judge, concurring:

I fully concur in the court's analysis of Oklahoma law and its affirmance of the judgment. I write separately to express my concern about what I consider an unnecessary citation to cases which adopt the so-called "great deference" rule where unsettled issues of state law are involved. *Bishop v. Wood*, 426 U.S. 341, 346 n. 10, 96 S.Ct. 2074, 2078 n. 10, 48 L.Ed.2d 684 (1976) ("great deference"); *Township of Hillsborough v. Cromwell*, 326 U.S. 620, 629–30, 66 S.Ct. 445, 451, 90 L.Ed. 358 (1946) ("great deference"); *Huddleston v. Dwyer*, 322 U.S. 232, 237, 64 S.Ct. 1015, 1018, 88 L.Ed. 1246 (1944) ("if not indispensable, ... at least a highly desirable and important aid to [the] determination of state law questions"); *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1036 (10th Cir.1975) ("great weight and credence"); *Binkley v. Manufacturers Life Ins. Co.*, 471 F.2d 889, 891 (10th Cir.), *cert. denied*, 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973) ("clearly erroneous"). This anomolous rule could more accurately be described as "the local judge as expert witness on matters of state law" rule, and in my opinion, is based on a rationale that cannot bear scrutiny.

I concede that the majority has stated the "great deference" rule in narrow terms, thus avoiding the indefensible problems created by the rule in its extreme form. In its worst form, the rule suggests that the "clearly erroneous" standard should be applied to rulings on issues of state law by a district court judge. Such an extreme application of the rule not only would undermine the obvious purpose of appeals to a collegial court, where collective consideration is one of the underlying notions, but would have the wasteful effect of leaving an issue unsettled when subsequently considered by parties, lawyers, and other district judges. If, as is true in many cases, either of two interpretations of state law would be rational, we would be required to affirm consecutive conflicting interpretations by two judges sitting in the same state, the untenable effect of which would be to leave the issue of law unsettled until the state court of appropriate authority finally has an opportunity to rule on the issue. Of all the duties of an appellate court, one of the most important is to settle matters before it, not only for the benefit of the parties to the suit but also for the guidance of the public and the trial courts.

This mischief results from an unsatisfactory rationale for the rule—*i.e.*, that the trial court is more experienced in matters of state law. Of course, it is not unknown for the inverse to be true, where a state judge or justice is appointed to the federal bench to review an inexperienced district judge. In any event, unless we are to assume some kind of extrajudicial contacts by the trial court, that court is limited to the same menu of state cases that the court of appeals has—even if in greater volume. Thus, the trial judge properly is limited to the same classic analysis derived from the precedents and the facts that confine an appeals court. This is the stuff of which standard law school fare is made. If the trial court has more seasoning in that process for state issues, the benefit of its experience will be conveyed to the appeals court by the trial court's opinion.

Properly understood and rationalized, the notion expressed in the old Supreme Court case of *Propper v. Clark*, 337 U.S. 472,

486–87, 69 S.Ct. 1333, 1341–42, 93 L.Ed. 1480 (1949) calls for us to do nothing different when dealing with issues of state law than what we should be doing in all other cases; we should begin with the presumption of affirmance based on the perfectly sound principle that the first duty of the courts is to settle matters without wasting judicial resources. Thus "great deference" should be paid to the trial court's decision because that which is settled should not be unsettled without substantial reason—not because the trial court is an "expert witness." Indeed, because of experience, particular district judges may come to their appointments with vastly more expertise in some areas of *federal law* than members of the court of appeals will ever achieve. If the present rationale were sound, the "great deference" rule should be applied in those cases as well. Hence, if there is appellate evil to be corrected, it lies in infidelity to proper deference in all cases, not in a lack of special deference when issues of state law are involved.

If all we are saying by repetition of the rule is that there is an important judicial economy in deference, we need not state the rule; we only need to practice it. If more than that is meant, the inevitable effect is to imply that our decision interpreting state law is less than final, an idea to which I cannot willingly assent. State issues often come to us before the state court of last resort has had an opportunity to rule on the issue. Until the state court does rule, our decisions should be just as final and binding on federal trial courts as if we were the court of final jurisdiction on that issue.

I suggest that the same problem exists with the growing trend toward treating traditional issues of law (such as contract interpretation) as issues of fact. The public has a right to know that when a construction of particular contract language has been made (often uniform clauses used in many contracts), they can rely on those determinations until overturned by the same process through which other rules of law are overturned. But these issues are not before us. I use them only to illustrate the importance of having appellate rules of review grounded in understandable and defensible theory.

I do not understand this panel to be saying that if a trial judge sitting in Oklahoma in a future case considers the arguments raised by the appellant in this case to be "reasonable," we will affirm that judgment as well. With that understanding, I repeat my full concurrence in the court's disposition of the issues in this case.