CHIMNEY ROCK LIMITED PARTNER-SHIP, an Oklahoma limited partnership, Appellee/Counter–Appellant,

v.

HONGKONG BANK OF CANADA, a Canadian chartered bank, Appellant/Counter–Appellee,

and

F & M Bank & Trust Company, an Oklahoma banking corporation, Appellee.

No. 79128.

Court of Appeals of Oklahoma, Division No. 3.

May 11, 1993.

Certiorari Denied July 13, 1993.

---

10. 28 U.S.C. §§ 1861–78 (1988).

11. *Williams,* 927 F.2d at 97.

Donald L. Kahl, Robert G. Cass, Tulsa, for appellant/counter-appellee, Hongkong Bank of Canada.

Thomas E. English, Carol Wood, Tulsa, for appellee/counter-appellant, Chimney Rock.

J. Schaad Titus, John A. Burkhardt, Tulsa, for appellee F & M Bank & Trust.

## OPINION

HUNTER, Judge:

Appellant Hongkong Bank of Canada (HKB) appeals the October 19, 1991 order of the trial court which granted Appellee/Counter Appellant Chimney Rock's (CR) motion to dismiss HKB's counter-claims alleging interference with HKB's business relations and conspiracy to interfere with HKB's business relations. HKB also appeals the trial court's October 19, 1991 order granting summary judgment in favor of Appellee F & M Bank (F & M) on the claims of interference with business relations, conspiracy to interfere with business relations and wrongful dishonor of letter of credit.

Two claims of the lawsuit were tried to a jury, namely, CR's claim for breach of contract and HKB's counterclaim for restitution. The jury returned a verdict in favor of HKB on CR's claim and returned an advisory verdict, adopted by the court, in favor of CR on HKB's counter-claim. HKB does not appeal these judgments. CR filed a motion for new trial claiming error in instructing the jury. The trial court denied the motion and CR counter-appeals from that order.

## BACKGROUND

In 1985, Bank of British Columbia (BBC), a Canadian bank, loaned Appellee Chimney Rock (CR) $8 million, U.S. The lending transaction was evidenced by several contracts, including a loan agreement, a promissory note, a deed of trust, a security agreement and an assignment of leases. As part of the loan agreement and promissory note, CR was to maintain a letter of credit in favor of BBC in the amount of $840,000.00. Appellee F & M Bank (F & M) issued the letter of credit in which BBC was the beneficiary. The letter of credit had an expiration date which was extended several times. In September, 1986, BBC attempted to draw on the letter of credit. CR contemporaneously filed a lawsuit for declaratory judgment and temporary injunction. F & M did not act on BBC's request for drawing on the letter. CR moved for summary judgment which was granted by the trial court. BBC appealed the order and the Court of Appeals, in unpublished opinion No. 68,901, reversed the ruling and remanded the matter, finding sufficient evidence of material facts in dispute.

BBC's assets and liabilities were sold and assigned to Hongkong Bank of Canada (HKB) in 1986. HKB is a Canadian bank. Its purchase of BBC was effectuated according to Canadian law. In 1990, HKB was substituted for BBC as the real party in interest in the instant case, without objection from either CR or F & M.

After the substitution, HKB amended its answer to include counter-claims and cross-claims against CR and F & M for wrongful interference with business relations, conspiracy to wrongfully interfere with business relations and a wrongful dishonor of letter of credit against F & M. CR filed a motion to dismiss these claims and F & M filed for summary judgment of the claims, both of which were granted by the court on the ground that 12 O.S.Supp.1990 § 2017(D) prohibits the assignment of these kinds of "noncontractual" claims. The court also found the law of Oklahoma, rather than that of Canada, the proper law to apply to the question of enforceability of the assignment. HKB appeals these orders. We find the court was correct in its determination that the law of Oklahoma was the one to apply, but incorrect in its interpretation of that law. These causes arise out of contract and are assignable.

The trial court denied HKB's request to certify the interlocutory orders and the re-

maining issues were tried to a jury. The jury found against CR on its claim against HKB for breach of contract and it also rendered an advisory verdict finding against HKB on its counterclaim for restitution. The court accepted the advice of the jury and entered judgments against CR on its claim and against HKB on its claim. HKB does not appeal these judgments. CR filed a motion for new trial which the trial court denied. CR appeals that order, alleging reversible error occurred in the instructing of the jury. We disagree and affirm the judgments.

## STANDARDS OF REVIEW

Summary judgment is proper only when there is no substantial dispute as to any material fact and one party is entitled to judgment as a matter of law. *Flanders v. Crane Co.*, 693 P.2d 602 (Okl.1985). Where, as in a motion for summary judgment or a pretrial motion to dismiss, facts are presented to the trial court by stipulation, depositions and other documentary materials, the appellate court is free to substitute its analysis of the record for that of the trial court. *Loffland Bros. v. Overstreet*, 758 P.2d 813 (Okl.1988). Based on its analysis of the record, the appellate court may also enter the judgment the trial court should have rendered. *Hampton v. Surety Development Corp.*, 817 P.2d 1273 (Okl.1991).

The appellate court uses a high standard in gauging the correctness of the trial court's ruling on a motion for new trial. The motion is addressed to the sound discretion of the trial court and we will not reverse a ruling denying the motion except on a clear showing of an abuse of discretion. *Franklin v. Hunt Dry Goods Co.*, 190 Okl. 296, 123 P.2d 258 (1942). Because the motion for new trial was based on alleged errors in instructing the jury, we apply the salient test of whether the jury was misled by the submitted or omitted instructions to the extent of rendering a different verdict than it would have rendered, absent the alleged errors. *Missouri–Kansas–Texas Railroad Co. v. Harper*, 468 P.2d 1014 (Okl.1970). We will not

set aside a verdict when it appears that the instructions, taken as a whole, fairly state the law as it applies to the evidence. *Walker v. St. Louis–San Francisco Railway Co.*, 646 P.2d 593 (Okl.1982). Furthermore, we will not disturb a jury verdict if there is any competent evidence reasonably tending to support the verdict. *Walker*, at p. 597, citing *Wat Henry Pontiac v. Pitcock*, 301 P.2d 203 (Okl.1956).

## FINDINGS ON REVIEW

None of the parties to the appeal attempts to show why a district court of the State of Oklahoma has or does not have jurisdiction to interpret and apply the law of a foreign country. HKB cites *Hays v. King*, 44 Okl. 180, 143 P. 1142 (1914) in support of its position that the district court should have applied Canadian law to this action, but in *Hays*, the "foreign state" is Arkansas. In any event, the validity of the contract whereby HKB purchased BBC's assets and liabilities, a transaction which took place in Canada between two Canadian banks pursuant to Canadian law, has never been disputed. The assignment of assets and liabilities is not questioned. Whatever enforceable rights BBC had in Oklahoma, HKB assumed through its purchase of BBC. The question raised by HKB on appeal is whether the claims bought by HKB arise out of contract, and are therefore assignable and enforceable in Oklahoma, or whether the claims are nonassignable torts.

### In This Case, the Claims are Assignable

It is long-established common law that personal torts are nonassignable. We do not tolerate champertous claims. In *Kansas City, M. & O. v. Shutt*, 24 Okl. 96, 104 P. 51 (1909), citing a Kansas case, the Oklahoma Supreme Court stated the rule, at p. 53, that "the general doctrine, both at law and in equity, is that the right of action for a pure tort is not the subject of assignment". The court also noted statutory changes to this rule by provisions that allow some *choses in action* to survive.

The statute at issue, 12 O.S.Supp. 1990 § 2017(D) states: "The assignment of claims not arising out of contract is prohibited. However, nothing in this section shall be construed to affect the law in this state as relates to the transfer of claims through subrogation". It is clear the allegation of wrongful dishonor of a letter of credit is an assignable contract claim. The question we must answer is whether the allegations of interference with business relations and conspiracy to interfere with business relations are torts arising out of contract or pure torts. Because in this instance the allegations are based on the belief that CR wrongfully interfered with HKB's attempt at drawing on the letter of credit and that CR and F & M conspired to wrongfully interfere with HKB's business, the alleged torts arose out of contract. Under these facts, the alleged torts are grounded in the contracts and would not be capable of existing except for the contracts. In *Momand v. Twentieth Century Fox Film Corp.*, 37 F.Supp. 649 (W.D.Okl.1941), Judge Murrah was asked to reconsider his order overruling a defendant's motion to dismiss. Believing the question of assignability of torts pursuant to Oklahoma law to be of vital importance, Judge Murrah determined to set out his views "in more detail". In that case, Plaintiff was the assignee of certain causes of action created by the Sherman Anti–Trust Act, 15 U.S.C.A. § 15. Because assignability of causes of action is a question of right, not procedure, the *Momand* court, at p. 656, held that Oklahoma law bearing on the right to assign a cause of action was the correct law to apply. At that time, the corresponding Oklahoma statute stated, in pertinent part: ... but this section shall

not be deemed to authorize the assignment of a thing in action, not arising out of contract. 12 O.S. § 221. The underlying allegations of the *Momand* case were that plaintiff's assignors suffered detriment to their property and business and the defendants were enriched thereby. The court found the basis of the wrong was a contract. The court also found, at p. 658, that no Oklahoma law or case required a violation of the contract to create a right of action arising out of the contract. The claims assigned in *Momand*, applying Oklahoma law, were assignable as arising out of contract.

The same result obtains in the instant case. We reverse the court's order in favor of CR dismissing HKB's counterclaims for interfering in business relations and conspiracy to interfere with business relations. We likewise reverse the court's grant of summary judgment in favor of F & M in which it adjudicated as a matter of law that HKB's crossclaims for interference with business relations, conspiracy to interfere with business relations and wrongful dishonor of letter of credit were nonassignable claims in Oklahoma and prohibited by 12 O.S.Supp. 2017(D). We remand these counterclaims and crossclaims for trial on the merits.

### No Error in Instructing the Jury

Regarding alleged errors in instructing the jury, we find no reversible errors. CR first claims that instruction No. 18, "Failure of Consideration", is confusing and misstates the law, especially omitting the materiality aspect, and directs a verdict against CR.[1] We disagree with

---

1. Failure of Consideration—Every contract must be supported by good consideration to be valid. If the consideration that was bargained for does not actually pass between the parties, either in whole or in part, there is a failure of consideration. The Bank claims that part of the consideration for any agreement to fund roof repairs and operating shortfalls was the execution of written loan documents granting the Bank certain rights and remedies. If you find that these loan documents, and the rights they grant, were part of the consideration to pass from Chimney Rock to the Bank, and you find that this consideration did not pass from Chim-

ney Rock to the Bank, and you find that the execution of the million dollar loan documents either: one, was so essential that the failure to execute them destroyed the entire consideration for the contract; or two, was so indispensable a part of what the parties intended that the contract would not have been made without them, then you must find that there has been a failure of consideration. If you find that there has been a failure of consideration, then you must find that the Bank has no obligation to pay any sums to Chimney Rock and that the Bank is entitled to recover the sums paid to Chimney Rock in anticipation of the agreement.

CR's interpretation of the instruction and find the instruction left fact-finding to the jury. In the totality of the 37 instructions, we cannot say the jury was misled. Instruction No. 18 was not an instruction on CR's claim, but related to one of HKB's defenses to CR's claim.

Next CR asserts reversible error occurred in instruction No. 21, Estoppel.[2] CR believes the instruction precluded the jury from considering anything other than the execution of documents as the material inducement for HKB's reimbursement agreement. Instruction No. 21 concerns HKB's affirmative defense. A plain reading of the instruction shows the law was correctly stated and applied to the evidence presented. The jury was not misled.

 Next CR proposes that a new trial is required because Instruction No. 22, Waiver, misstates the law and emphasizes the "execution of the proposed supplemental loan documents as the sole significant consideration between the parties".[3] Both CR and HKB cite *Faulkenberry v. Kansas City Southern Railway Co.*, 602 P.2d 203 (Okl.1979) as authority for defining the "waiver". The case supports the correctness of the instruction when it defines "waiver" as a "voluntary or intentional relinquishment of a known right." There is no reversible error in this instruction.

 Lastly, CR complains that instructions 24, 25, and 26, all relating to HKB's counter-claim for restitution were erroneous because it believes the instructions conflict with instructions concerning the defense of CR's claims by HKB; misstate the law; impose inconsistent legal standards and confused the jury. We are not convinced such egregious errors occurred because CR prevailed on these issues. The jury, by general *advisory* verdict, which was adopted by the court and entered as judgment, found against HKB on its counterclaim for restitution.

We therefore reverse the orders of June 19, 1991 insofar as they dismissed or summarily adjudged HKB's claims for wrongful interference of business relations, conspiracy to wrongfully interfere with business relations and wrongful dishonor of letter of credit and remand the matter for trial on the merits of these claims.

We affirm the judgments entered by the court on December 18, 1991, pursuant to the jury verdict and advisory verdict where the jury found against CR on its claim for breach of contract and against HKB on its counterclaim for restitution.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

HANSEN, C.J., and BAILEY, P.J., concur.

---

**2.** Estoppel—You are instructed that the law recognizes that a person may forfeit its rights by causing another to change its position in reliance on something said or done by the first party.

This doctrine of the law is called "estoppel" and is applied to promote justice and fair dealing when, by words or conduct one party has induced another to rely upon those words or conduct to his injury.

In this action, the Bank is relying on the doctrine of estoppel to establish that Chimney Rock had so led the Bank to believe that it consented to a second loan agreement, that the Bank was entitled to rely on that belief, and to act accordingly.

Before you may find that the Bank is entitled to rely on the theory of estoppel, you must find each of the following facts are true: (1) that Chimney Rock agreed to enter into documentation evidencing the terms of a second loan agreement with the Bank; (2) that in reliance on Chimney Rock's agreement to do so; (3) that the Bank changed its position in reliance on Chimney Rock's statements; and (4) that Chimney Rock later refused to perform as agreed.

If you find all these elements, then you must find that Chimney Rock is estopped to enforce the alleged contract between Chimney Rock and the Bank.

**3.** Waiver—You are instructed that a party may give up, relinquish or "waive" a known contractual right. Here, the Bank has asserted that Chimney Rock waived any right it might have had to receive approximately $80,000 for July, 1986 operating shortfalls: one, by changing its request to $96,000 for July, 1986 operating shortfalls on August 20, 1986; two, by Chimney Rock's failure to enter into loan documents evidencing any purported agreement between the parties, or three, by refusing to make payments as called for under the parties' agreements.