JUSTICE WARNER,
concurring and dissenting.
¶71 I concur with the Court in several respects. I disagree with the Court on the seminal issue of whether the District Court was required by conflict of laws principles previously adopted and by comity to dismiss this action. This action should either be decided under North Dakota law or dismissed in deference to the North Dakota judgment.
¶72 This case stems from the Court’s decision in Hardy, which unduly restricts the right to contract, and denies the legislature its rightful role in making policy decisions. The Court compounded the problems inherent in Hardy when it decided Mitchell by misconstruing § 28-3-102, MCA, and essentially ignoring the uniform conflict of law principles which were adopted in Casarotto. Casarotto, 268 Mont. at 373-74, 886 P.2d at 934. Now, the Court again errs by refusing to let North Dakota courts decide questions arising between North Dakota citizens concerning a North Dakota contract.
¶73 The Court discusses seven issues. ¶¶ 15-21.1 do not disagree with the entirety of the Court’s analysis. I agree that the District Court did not err in concluding that it had personal jurisdiction over Nodak, ¶ 25; I agree the District Court did not err in refusing to accord preclusive effect to the North Dakota Judgment under the Full Faith and Credit Clause to the United States Constitution, ¶ 61; and I agree that collateral estoppel does not preclude the Estate from litigating its claims in Montana, ¶ 63. While the record is not as clear as the Court implies, ¶ 34, considering Nodak’s actions in this case, I conclude that the District Court did not abuse its discretion when it denied Nodak’s motion to stay Montana proceedings pending the outcome of the North *490 Dakota action based on the “first to file” rule.[1] Along with Chief Justice Gray and Justice Rice, I disagree with the result of Hardy. Hardy, ¶ 49 (Rice, J. & Gray, C.J., dissenting). The case is, however, the law in Montana. Unless and until Hardy is overturned there is no error in the District Court’s conclusion of law that under Montana law the Estate could stack the UIM policies.
¶74 I disagree with the Court and would hold that the District Court erred in concluding that Montana law applies to the Estate’s stacking claims; alternatively, I would dismiss this action, deferring to the decision of the North Dakota Supreme Court.
¶75 Section 28-3-102, MCA, provides:
A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.
¶76 The error the Court makes is in holding that Montana law must apply every time a contract made elsewhere has some effect in Montana. As it erroneously did in Mitchell, the Court again says when an automobile accident happens in Montana, Montana is “the” place where an applicable insurance contract is performed. Then, because the contract is to be performed here, pursuant to § 28-3-102 no further analysis -under the Restatement factors is required. ¶¶ 40,41; Mitchell, ¶ 20. Under the Court’s interpretation of § 28-3-102, there is no need for conflict of law principles. If the Court’s premise is accepted, when there is sufficient contact with Montana to give its courts jurisdiction, a contract, any contract, is performed in Montana. The Court is incorrect. In truth, § 28-3-102 is not an absolute directive that when an accident happens in Montana, Montana law must always apply to the interpretation of an applicable insurance contract.
¶77 The fact that an automobile insurance policy provides coverage throughout the United States is not alone sufficient to show that it is only performed where an accident happens. It is obviously the intention of the parties to the contract that it will be performed in many places. In a case such as presented here, Montana is simply “a” place the insurance contract may be performed. The contacts with Montana noted by the Court at ¶ 44 may have relevance in determining which state’s law applies. However, these factors are most *491 closely related to the Estate’s tort claims against Stanton, and are only tangentially related to the contract claims the Estate makes against Wamsley’s insurer, Nodak. The fact that the accident happened in Montana is simply one of several factors to be considered in making the decision which law should apply. But, it is not the only factor. It is obvious that North Dakota, where the parties to this action are domiciled and live, where they negotiated for the insurance, where they entered the contract, where the premiums were paid, where the car involved was garaged, and where any payment from Nodak will be made, is also a place where the insurance contract will be performed.
¶78 There are many instances, when an accident happens in Montana, that an insurance contract should be interpreted by applying Montana law. Likewise, Montana law may be appropriately applied in interpreting an insurance contract when an accident did not happen in Montana.
¶79 In my view, the Court errs in holding that Montana courts will not consider multi-state insurance contacts as directed by the Restatement (Second) of Conflict of Laws § 193, which the Court sets out at ¶ 36.
¶80 Other courts, interpreting statutes identical to § 28-3-102, have concluded that the law of the state where an insurance contract was made should generally apply, rather than the law of the state where an accident happened to occur. E.g. Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985); Great West Cas. Co. v. Hovaldt, 603 N.W.2d 198, 201 (S.D. 1999); Rush v. Travelers Indem. Co., 891 F.2d 267, 270 (10th Cir. 1989) (citing Rhody, 771 F.2d at 1420); Bohannan v. Allstate Ins. Co., 820 P.2d 787, 797 (Okla. 1991). For example, in Rhody, the Tenth Circuit held that an identical Oklahoma statute did not require the application of Oklahoma law when an automobile insurance contract was entered in Texas, but an accident occurred in Oklahoma. The court reasoned that the wording of the statute “restrict[ed] application of the law of the place of performance of a contract to cases in which the place of performance is indicated in the contract.” Rhody, 771 F.2d at 1420 (emphasis omitted). Simply establishing the United States as the area of coverage was insufficient, in the Tenth Circuit’s view, to indicate the intent for the place of performance to be wherever an incident occurred and gave rise to a claim. Rhody, 771 F.2d at 1420.
¶81 These cases and other cases addressing similar facts recognize that the state where the parties entered the contract has a greater interest in having its own law applied than a state that is only connected to the parties by happenstance. In an identical situation, the *492 Oregon Supreme Court declined to apply its own law to interpret an insurance contract entered into in Michigan when the plaintiff was involved in an automobile accident in Oregon because the “place of plaintiffs injury was fortuitous.” Davis v. State Farm Mut. Auto. Ins. Co., 507 P.2d 9, 10 (Or. 1973). Instead, the court concluded it was better to apply the law of the state with more connection to the contract between the insurer and insured. Davis, 507 P.2d at 10. See also Lee v. Saliga, 373 S.E.2d 345, 352 (W. Va. 1988) (concluding that another state’s law should apply to interpret an insurance contract where West Virginia’s “only connection to the dispute is the fortuity that the accident occurred there”); State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1169 (Fla. 2006) (declining to apply Florida law when the insureds were not permanent residents of Florida because “[t]o do so would throw conflicts-of-law jurisprudence into disarray and destroy the stability in contractual arrangements”).
¶82 This Court has recognized in the context of employment law that when a contract does not indicate a particular place of performance, § 28-3-102 does not require the application of Montana law to the contract. See Burchett v. Mastec N. Am., Inc., 2004 MT 177, 322 Mont. 93, 93 P.3d 1247. In Burchett, we concluded that § 28-3-102 did not apply because “[a]t the time [they] entered into the employment contract, the parties did not know where it was to be performed; the work... was transitory by nature.” Burchett, ¶ 13. The contract in this case is analogous. As in Burchett, when the Wamsleys and Nodak entered the insurance contract, they did not know that performance would occur in Montana. Section 28-3-102 thus does not mandate the application of Montana law, based on this Court’s own reasoning in Burchett.
¶83 The insurance contract at issue here was between residents of North Dakota who conduct their business there. It was entered in North Dakota and the vehicles were principally garaged in North Dakota. Nodak set its rates and the insured’s paid their premiums in North Dakota. The parties and the insurance contract have virtually no connection to Montana other than the “fortuity that the accident occurred [h]ere.” Lee, 373 S.E.2d at 352. Considering that the tort claims the Estate makes against Stanton only peripherally involve the contract claims against Nodak, the place where the insurance contract was negotiated, the place where it was made, the place of performance, the principal location of the insured autos, and considering the domicile, residence and place of business of the parties, it becomes *493 obvious that North Dakota law should apply to the Estate’s claims against Nodak. See Restatement (Second) of Conflict of Laws § 188(2).
¶84 Further, in my view, this Court should grant comity to North Dakota in this instance for a reason which the Court does not mention. The Montana Supreme Court has the right and the duty to correctly interpret Montana law for the benefit of Montana citizens. Still, Montana is a part of the United States and the judgments of our sister states are important-especially to the citizens of those other states. The only Montanans affected by the Court’s decision today are the local lawyers. The refusal to grant comity in this case, where only North Dakota policy is directly affected, impinges unnecessarily upon the harmonious interstate relations which are part and parcel of the spirit of co-operative federalism. See Simmons, 206 Mont. at 291, 670 P.2d at 1385.
¶85 There are now two diametrically opposed judgments, oneinNorth Dakota and the other in Montana. It remains to be seen if Montana’s decision today aids the Estate’s pursuit of an insurance payment the Wamsleys did not bargain for, or only necessitates further litigation between North Dakota citizens. I would defer to the North Dakota judgment and dissent from the Court’s decision not to do so.

 The “first to file” rule, noted by the Court at ¶¶ 32,34, is an important factor in conflict of laws jurisprudence. However, under the facts of this case I agree with the Court that it is not determinative.